### MORELAND v. BROWN.

(Circuit Court of Appeals, Ninth Circuit. February 14, 1898.)

#### No. 390.

1. BANKS AND BANKING—SPECIAL DEPOSIT.
   A debtor deposited in a bank in New York the amount due from him to a creditor in Helena, Mont. The bank in New York telegraphed the Bank of Helena to pay the debt, and charge to it. The Bank of Helena refused to pay in any way but by exchange on New York, which the creditor refused to accept, and also refused to permit the amount to be placed to his credit. The creditor then accepted a draft on the New York bank, to be a payment if honored. The Bank of Helena suspended, and the draft was not paid. *Held,* that the refusal of the creditor to accept the draft in payment, or to permit the amount to be placed to his credit, made it a special deposit subject to the law governing such deposits.

2. SAME—PLEADING.
   Where the complaint sets forth facts sufficient to make a special deposit, a demurrer will not be sustained because it does not appear from the com-
   86 F.—17

plaint that there was continuously in the bank, from the time of the special deposit to the day the bank failed, a sum of money equal to the amount of the deposit.

Appeal from the Circuit Court of the United States for the District of Montana.

This action was originally brought by the plaintiff, Isaac S. Moreland, in the district court of the First judicial district of the state of Montana, against the receiver of the First National Bank of Helena, and by the latter removed to the circuit court of the United States for the district of Montana. The object of the action is to establish a lien upon certain collateral securities in the hands of the receiver, to the amount of $2,635, with interest from August 31, 1896, and to obtain a decree that the receiver be required to pay that sum into court, with costs, for the use of the plaintiff. The amended bill of complaint alleges, in substance, that the plaintiff had due him, on August 31, 1896, the sum of $2,635, from one Thomas Anderson, then in New York City. By agreement between the plaintiff and Anderson, the latter, on that day, deposited the amount named in the First National Bank of New York City, to be by it transmitted and paid to the plaintiff. The First National Bank of New York forthwith telegraphed to the First National Bank of Helena, Mont., to pay the sum of $2,635 to the plaintiff, and charge the same to the First National Bank of New York. The plaintiff, being advised of this direction to the First National Bank of Helena, called at that bank, and demanded payment of the said sum, but the bank refused to give the plaintiff anything in payment of the sum except exchange drawn by it upon the said First National Bank of New York, which the plaintiff refused to accept. The bank then requested the plaintiff that he permit the said sum to be placed to the credit of his account with the said First National Bank of Helena, with which request the plaintiff also refused to comply. After further protracted negotiations, in which the plaintiff demanded the immediate payment of the sum in cash, the bank peremptorily declined to give the plaintiff anything except exchange on New York. Finally, the plaintiff accepted of the First National Bank of Helena a draft drawn by it on the First National Bank of New York, with the express reservation on his part, at the time declared to the said bank, that he should consider it a payment only in case the draft was honored. The First National Bank of Helena suspended on the 3d day of September, 1896, and on the 15th day of October, 1896, E. D. Edgerton was appointed the receiver of the bank by the comptroller of the currency. The draft which the plaintiff received from the Helena bank was transmitted to the New York bank, and payment of it refused, for the reason, as the fact then was, that the Helena bank had suspended, and closed its doors, prior to the presentation of the draft for payment to the New York bank. When Thomas Anderson made the payment of $2,635 to the First National Bank of New York, to be transmitted to the plaintiff, the said bank placed the amount to the credit of the account of the First National Bank of Helena, making the entry on its books as on account of plaintiff. When the Helena bank suspended, on September 3, 1896, it had to its credit about $11,000 on the books of the New York bank, and it was at the same time obligated to the New York bank in the sum of about $15,000, to secure the payment of which the New York bank held collateral security consisting of bills payable and other evidences of indebtedness due the Helena bank amounting to the face value of upward of $100,000. The receiver of the Helena bank, acting under advice and permission of the comptroller of the currency, proceeded to redeem this collateral security in the New York bank, and for this purpose paid to that bank the sum of $4,000, being the difference between the debit and credit account of the Helena bank with the New York bank. In this credit account was this sum of $2,635 paid to the New York bank by Anderson on account of the plaintiff. When the New York bank surrendered the collateral to the receiver of the Helena bank, the New York bank supposed that the Helena bank had paid plaintiff the amount of his draft, and that the latter bank was entitled to credit for that amount in accordance with the credit in the books of the New York bank. The defendant is the successor of Edgerton as the duly-appointed receiver of the bank. To this complaint the defendant demurred on the ground that by the complainant's own

showing he was not entitled to the relief prayed for in the amended bill against the defendant. The demurrer was sustained, and the bill dismissed.

Richard R. Purcell and Thomas J. Walsh, for appellant.

Wm. Wallace, for appellee.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

MORROW, Circuit Judge, after stating the case as above, delivered the following opinion:

In determining the sufficiency of the bill of complaint, the important question is whether the order of the New York bank to the Helena bank to pay the plaintiff the sum of $2,635 was in the nature of a special deposit for that purpose. When the plaintiff called on the Helena bank for the money transmitted to it by the New York bank for his account, the officers of the Helena bank admitted, in effect, that the bank had that particular deposit for him, but refused to pay it, except by giving exchange on the New York bank, or by placing the amount to his credit in the Helena bank. The refusal of the plaintiff to accept either proposition as a payment of the order telegraphed by the New York bank fixed the character of the deposit in the Helena bank as a special deposit for the plaintiff, and subject to the law governing such deposits. The relation of debtor and creditor was not established. It was precisely the relation which the plaintiff refused to accept. The Helena bank was unquestionably the agent of the New York bank to pay the plaintiff a specified sum of money, but when the Helena bank refused to make the payment as directed by the New York bank, and undertook to deal with the plaintiff on its own account, it admitted that it had in its possession the specific sum, and the bank and its receiver are estopped from denying that such was the fact. In Marine Bank v. Fulton Bank, 2 Wall. 252, 256, the supreme court determined the character of a deposit that would create the relation of debtor and creditor, and at the same time clearly distinguish it from a transaction involving the trust feature of a special deposit. The Fulton Bank of New York sent two notes for collection to the Marine Bank of Chicago. The two notes were collected by the Marine Bank, and the proceeds placed to the credit of the New York bank. There being some trouble at that time about the currency, the Fulton Bank requested the Marine Bank to hold the avails of the collection, subject to order, and advise amount credited. Afterwards the Marine Bank sought to pay in the currency which it had received on the collection, then largely depreciated, but its claim in this respect was denied; Mr. Justice Miller, speaking for the court, saying:

"The truth undoubtedly is * * * that both parties understood that when the money was collected plaintiff was to have credit with the defendant for the amount of the collection, and that defendant would use the money in his business. Thus the defendant was guilty of no wrong in using the money, because it had become its own. It was used by the bank in the same manner that it used the money deposited with it that day by city customers; and the relation between the two banks was the same as that between the Chicago bank and its city depositors. It would be a waste of argument to attempt to prove that this was a debtor and creditor relation. All deposits made with bankers may be divided into two classes, namely, those in which the bank becomes bailee of the de-

positor, the title to the thing deposited remaining with the latter; and that other kind of deposit of money peculiar to banking business, in which the depositor, for his own convenience, parts with the title to his money, and loans it to the banker, and the latter, in consideration of the loan of the money and the right to use it for his own profit, agrees to refund the same amount, or any part thereof, on .demand. The case before us is not of the former class. It must be of the latter."

In the present case the plaintiff, as we have seen, not only did not authorize the Helena bank to give him credit on its books for the amount of the draft, but positively refused to accept such a credit. He declined to part with the title to his money, and refused to loan it to the bank for any purpose. It was a special deposit made by the New York bank in the execution of an express trust in which the title to the money was in the plaintiff.

In Farley v. Turner, 26 Law J. Ch. 710, the customer of a bank, having a sum of £924 standing on his account, paid in a further sum of £707, with a written direction that £500 of that sum should be forwarded to another bank to meet a bill to become due. The £500 was sent as directed, but before the bill became due the latter bank ceased to carry on business. It was held that the £500 was specifically appropriated, and belonged to the customer of the bank receiving the deposit, and not to the general creditors of the suspended bank. As the bill had not become due when the bank failed, the title to the money remained in the original depositor. In the present case the title had been transferred to the payee before the bank closed.

It is objected, however, to the claim of a special deposit, that it does not appear from the complaint that there was in the bank from August 30th to September 4th, continuously, a sum of money equal to or greater than $2,635, the amount in question. This objection is based upon observations to be found in decisions of the court that it is not important that the special deposit claimed to have been made in the suspended bank should bear some mark by which it might be identified. It will be sufficient, the courts say, to trace it to the bank vaults, and find a sum equal to it, and, presumably, representing it, continually remaining therein until the bank passes into the hands of the receiver. If that amount of money was not, in fact, in the vaults of the Helena bank between the dates named, it might, perhaps, be set up by way of defense; but it is not material to be considered at this time in determining the sufficiency of the complaint. In our opinion, the facts set forth in the complaint are sufficient to entitle the plaintiff to maintain his action against the receiver of the bank for the amount claimed as a special deposit.

It is further contended, on the part of the plaintiff that when the New York bank sent its telegraphic order to the Helena bank to pay plaintiff the sum of $2,635, and credited the latter bank with the amount as having been paid, the New York bank held collateral securities belonging to the Helena bank out of which it was able to make that credit good; and, the receiver of the Helena bank, having used that credit in the settlement of the balance due the New York bank, and in securing possession of the securities, the plaintiff has become subrogated to the rights of the New York bank in such collateral, and is now entitled to pursue those securities, or their proceeds, in the

hands of the receiver. This question involves the relation of the New York bank to the Helena bank, and the nature of the agreement under which the collaterals were held by the New York bank. The complaint does not make these matters clear, and is, therefore, not sufficient to establish a lien on such securities. For the reasons above given, the decree of the circuit court must be reversed, and the case remanded to the circuit court for further proceedings in accordance with this opinion.