MERCHANTS' NAT. BANK OF HELENA, MONT., et al. v. SCHOOL DIST. NO. 8, OF MEAGHER COUNTY, MONT.

(Circuit Court of Appeals, Ninth Circuit. May 2, 1899.)

1. NATIONAL BANKS—INSOLVENCY—TRUST FUNDS.

A national bank received funds of a school district which it had no right to receive as an ordinary deposit, or to mingle with its own funds, and which it undertook to hold for the special purpose of paying certain bonds of the school district, and no other. It did in fact mingle the funds with its own, and became insolvent, none of the bonds having been presented for payment. It had on hand, at the time it suspended business, cash in excess of the amount of such deposit, which came into the hands of its receiver. *Held*, that such deposit constituted a trust fund, which was recoverable by the school district from the receiver; the presumption being that so much of the cash on hand as equaled the deposit was the money of the school district.

2. SAME.

Neither a bank nor its receiver can deny the receipt of money deposited with the bank as a trust fund on the ground that no money was actually deposited, where it received and accepted credit for the amount with a correspondent, and received the money thereon in due course of business.

3. SAME—CLAIMS DISALLOWED BY RECEIVER—INTEREST.

No interest is recoverable against the fund in the hands of the receiver of an insolvent national bank on recovery in a suit to establish a claim against the bank, made necessary solely by the disallowance of the claim by the receiver. The receiver is required to exercise his judgment as to the allowance of claims, and other creditors are not chargeable with interest because of an error on his part.

Appeal from the Circuit Court of the United States for the District of Montana.

McConnell & McConnell, for appellants.

H. G. McIntire, for appellee.

94 F.—45

Before GILBERT and ROSS, Circuit Judges, and HAWLEY, District Judge.

GILBERT, Circuit Judge. The facts in this case, as they were found by the master in chancery, to whom the cause was referred to make findings and report conclusions of law, are, in brief, as follows: On July 1, 1896, certain coupon bonds of school district No. 8, of Meagher county, Mont., which it had issued in the aggregate sum of $14,000, became due and payable. Prior to that date, and for the purpose of refunding and paying the said bonds, the school district issued a second series of coupon bonds in the aggregate sum of $13,000, and sold them to H. B. Palmer, of Helena, Mont., for $13,056. On July 11, 1896, Palmer deposited with the Merchants' National Bank of Helena, Mont., "as a special deposit to the credit" of the school district, the sum of $13,056, under an agreement between Palmer and the officers of the bank that said sum should be paid out only in the redemption and payment of said prior coupon bonds, which matured on July 1, 1896, and that an account should be opened therefor, known as the "Redemption Account White Sulphur Springs School District Bonds." In pursuance of said agreement, an account was opened upon the books of the bank, designated "Bonds of Meagher County." The officers of the bank knew that the $13,056 so received from Palmer was the proceeds of said refunding bonds, and that the same was applicable only to the redemption of said matured bonds. The coupon bonds maturing upon July 1, 1896, had not been presented by the owners thereof for redemption and payment, but were outstanding and unpaid. On February 13, 1897, the bank became insolvent, and the receiver took possession of its property and assets, among which was cash in the sum of $19,533, and the receiver collected thereafter from other assets $200,000. The bank has not money or assets sufficient to pay its indebtedness in full. Upon these facts it was held, among other conclusions of law, that said sum of $13,056 was a "special deposit" with the bank to the credit of the school district, to be applied solely to the redemption and payment of the prior bonds. A decree was entered, ordering that the receiver pay over to the school district the said sum, with interest from the date of the commencement of the suit. On the appeal it is contended that, in any view of the facts of the case, the court erred in decreeing payment to the appellee of the full amount of $13,056, and erred in allowing interest on the same. The deposit with the bank of the funds realized upon the sale of the school district's bonds was prohibited by section 1811 of the Political Code of Montana, which provides as follows:

"All moneys arising from the sale of said bonds shall be paid forthwith into the treasury of the county in which said school district is located and shall be immediately available to apply to the purpose authorized and no other purpose."

Section 1817 denounces the penalty for the violation of the statute. Under the terms of the statute, the bank could not lawfully receive the moneys of the school district as an ordinary deposit, or mingle the same with its own funds. The bank had knowledge of

the nature of the funds, and was chargeable with knowledge of the statute. That it did understand the rights of the school district in that regard is shown by the facts as they were found by the master. The bank undertook to receive the money as a trust fund for an express purpose, and for no other. It is immaterial that in the findings the deposit is designated a "special deposit." The true nature of the transaction is disclosed by the facts. The money was to be treated as the funds of the school district, and not as the funds of the bank, and, in the light of that understanding, it is clear that the bank had no right to commingle the money with other funds. The fact that it did place it with other funds, and that at the time when its doors were closed there was not in its possession a separate fund in accordance with the understanding had when the deposit was made, cannot prejudice the rights of the appellee, so long as it can be shown that a sum of money equal to the amount so deposited remained in the possession of the bank, and was there when the receiver took possession. It will be presumed that of the funds so on hand $13,056 belonged to the appellee. Moreland v. Brown, 30 C. C. A. 23, 86 Fed. 257; National Bank v. Insurance Co., 104 U. S. 54; Capital Nat. Bank v. Coldwater Nat. Bank (Neb.) 69 N. W. 115.

It is contended that the finding of the master, to the effect that Palmer deposited with the bank the sum of $13,056, is at variance with the facts as they are disclosed in the evidence. It appears from the evidence that the bonds were sold in Boston, and that the sum realized thereon was deposited with the National City Bank of Boston, which bank was the correspondent of the Helena bank. The Boston bank notified the Helena bank that that amount had been placed to the credit of the latter by a letter which was received by the bank at Helena on July 11, 1896. On July 3d the Helena bank had with the Boston bank a credit of $39,011.60, against which it drew on that day the sum of $10,000, leaving a balance of $29,011.60, which was not further reduced until July 13th, when a draft for $8,075 was drawn against it. On July 11, 1896, the Helena bank gave the personal account of Palmer a credit on its books of the full amount of the proceeds of the sale of the bonds. Thereupon Palmer gave the bank his personal check for $13,056, and requested that an account be opened as found by the master. Upon these facts it is contended that the money which was realized on the sale of the bonds was never actually deposited with the Helena bank. It is not material in this case whether it was actually so deposited or not. It is undisputed that the money belonged to the school district, and that it was deposited with the bank's correspondent in Boston, and that, upon the receipt of intelligence of such deposit, the Helena bank opened the account, and entered into the agreement which was indicated in the findings of the master. The Helena bank, if it had not then the money in its actual possession, had it under its control, and could lawfully, in the due course of banking, have paid it over to Palmer or to the school district. Instead of so paying the money, it chose to enter into the arrangement which was consummated. Neither

the bank nor the receiver is now in a position to say that the money received by the bank's agent was not actually received by the bank. The question is not complicated by any failure on the part of the Boston bank to pay to the Helena bank in full the amount which it received. The Helena bank received the money in the due course of business. In view of the receipt of that sum by its agent, and the arrangement which it made with Palmer on behalf of the school district, it will be deemed to have diverted from its funds in bank on July 11, 1896, the sum of $13,056, and to have placed the same to the credit of the school district. That sum became and was from that date a trust fund, subject to disbursement only, upon the order of the school district. In Bank v. Armstrong, 148 U. S. 58, 13 Sup. Ct. 533, the court quoted with approval the language of Mr. Justice Miller in Marine Bank v. Fulton Bank, 2 Wall. 252, in which it was said:

"All deposits made with bankers may be divided into two classes, namely, those in which the bank becomes bailee of the depositor, the title to the thing deposited remaining with the latter, and that other kind of deposit money peculiar to banking business, in which the depositor, for his own convenience, parts with the title to his money, and loans it to the banker; and the latter, in consideration of the loan of the money and the right to use it for his own profit, agrees to refund the same amount, or any part thereof, on demand."

The school district could not, and did not, part with its title to the money, nor did it lend the same to the bank. The general principles which govern this case were considered by this court in the cases of Spokane Co. v. First Nat. Bank of Spokane, 16 C. C. A. 81, 68 Fed. 979, and Moreland v. Brown, 30 C. C. A. 23, 86 Fed. 257. In the former case it was held that the depositor of a fund intrusted to a bank, by which it has been misapplied, is not entitled to a general lien upon the assets of the bank for the repayment thereof, but that he can follow the same, so far as it can be traced in the possession of the bank, either in its original form or in forms to which it has been converted, or into a general fund, with which it has been commingled, and that his right to recover it in the latter instance will depend upon whether or not a sum of money still remains in the possession of the bank equal to the amount so due him; it being the presumption of the law that, if moneys have been disbursed out of such fund, it was the money which the bank had the right to pay out, and not the money which was intrusted to it in a fiduciary capacity. In Moreland v. Brown the facts were these: A debtor had deposited in a New York bank the amount which he owed to a creditor in Helena. The New York bank telegraphed the Helena bank to pay the debt, and charge the same to its account. The Helena bank refused to pay in any way, except by exchange on New York, which the creditor refused to accept. The creditor refused also to permit the amount to be placed to his credit in the Helena bank. He then accepted a draft on the New York bank to be a payment only if honored. The Helena bank closed its doors, and the draft was not paid. The court held that the refusal of the creditor to accept the draft in payment, or to permit the amount to be placed to his credit, fixed the character of the deposit in the Helena bank as a special de-

osit for him, subject to the law governing such deposits, and that the relation of debtor and creditor was not established between him and the bank. We find no error in the decree of the circuit court that the receiver pay the appellee the full amount of the fund so deposited to its credit.

But the objection which is urged by the appellants to the allowance of interest on the claim must be sustained. The receiver disallowed the claim, and the suit was brought to obtain a decree for its payment. No interest is chargeable against the fund in the receiver's hands, based upon his erroneous action in disallowing claims. It is his function, by and under the direction of the comptroller, to disburse the fund according to law. In the matter of the allowance or disallowance of claims he must exercise his judgment. If he make an erroneous decision, the law does not contemplate that the other creditors shall suffer therefor. If interest is allowed to the appellee, the dividends payable to the other creditors will by that amount be reduced. In White v. Knox, 111 U. S. 784, 4 Sup. Ct. 686, Mr. Chief Justice Waite said:

"The only claims the comptroller can recognize in the settlement of the affairs of the bank are those which are shown, by proof satisfactory to him, or by the adjudication of a competent court, to have had their origin in something done before the insolvency. It is clearly his duty, therefore, in paying dividends, to take the value of the claim at that time as the basis of distribution. If interest is added on one claim after that date, before the percentage of dividend is calculated, it should be upon all, otherwise the distribution would be according to different rules, and not ratably, as the law requires."

The demand for interest in this case is not based upon any action of the bank itself before insolvency. It rests solely upon the disallowance of the claim by the receiver. The cause will be remanded to the circuit court, with instructions to so modify the decree as to disallow the interest upon the appellee's claim. In other respects the decree will be affirmed.