### TITLOW et al. v. McCORMICK.

(Circuit Court of Appeals, Ninth Circuit. September 5, 1916.)

No. 2653.

BANKS AND BANKING ⊛166(1)—INSOLVENCY AND RECEIVERS—RECOVERY OF TRUST FUNDS.

Complainant deposited for collection with the bank for which defendant became receiver certain school district warrants. The bank collected the same in three installments, in each case depositing the checks received to its credit in a different correspondent bank. Between the time of such deposits and its failure, some months afterward, it overdrew its accounts with two of such correspondents for purposes not shown. In the third correspondent bank it maintained a deposit at all times until its failure; the amount at that time being the smallest, and less than the collection deposited. *Held*, that the collections constituted a trust fund, recoverable by complainant from the receiver, in so far as it could be traced into his hands, and that in the case of the third bank complainant was entitled to recover the amount remaining in the account at the time

of the failure, but that in the case of the other two deposits nothing was recoverable, although the bank at the time of closing and at all times prior thereto had cash on hand greater in amount than the collections; there being no presumption that the collections ever went into such cash fund.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 575, 577; Dec. Dig. &#8658;166(1).]

Appeal from the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Suit in equity by Anna E. McCormick against A. R. Titlow, as receiver of the United States National Bank of Centralia, and the United States National Bank of Centralia. Decree in part for complainant, and defendants appeal. Modified and affirmed.

On the 22d day of August, 1913, the appellee, who was then the owner of certain school warrants issued by school district No. 9 of Lewis County, state of Washington, left them with the United States National Bank of Centralia for collection; the bank giving her this receipt therefor:

"Tacoma, Wash., Aug. 22, 1913.

"Received from Mrs. Anna E. McCormick for collection, the following warrants issued by school district No. 9, Lewis county, Washington [stating the various warrants and their respective amounts].

"The United States National Bank, Centralia, Wash.,

"C. S. Gilchrist, Vice President."

On the 31st of January following the school district mentioned issued a call for the presentation for payment of warrants Nos. 3331, 3297, 3298, and 3299, aggregating, with interest, $1,659.54, which warrants were among those left with the bank by Mrs. McCormick, and which warrants the bank thereafter presented to the proper officer of the county for payment, and received in payment thereof a check of the treasurer of the county in favor of the bank, drawn on Coffman, Dobson & Co., bankers at Chehalis, Wash., for $1,747.04, which amount included some other small items. The bank thereupon sent the check to Coffman, Dobson & Co., with instructions to deposit the amount of it to its credit, which was done—the appellant bank charging Coffman, Dobson & Co. with a like amount, the two banks being correspondents. Including the amount of this check, the appellant bank then had to its credit with Coffman, Dobson & Co. $5,046.20.

Subsequently and on the 11th of April, 1914, the school district issued another call for its outstanding warrants, which included all of the balance of the warrants owned by the appellee and so left by her with the appellant bank for collection. Three days thereafter, to wit, April 14, 1914, the bank presented all of those warrants to the county treasurer of Lewis county for payment, which were thereupon paid to the appellant bank by four checks, two on the Security State Bank of Chehalis, one for $3,598, and one for $1,765.06, and two on Chehalis National Bank of Chehalis, one for $4,912.41, and the other for $4,061.77; each of the four checks being dated April 14, 1914. The appellant bank thereupon deposited the two checks in its favor on the Security State Bank, aggregating $5,363.06, with that bank, receiving credit to itself therefor on an overdraft (in excess of the amount of the deposit) which then stood against the appellant bank on the books of the Security State Bank. The other two checks, amounting in the aggregate to $8,974.18 were on the next day, to wit, April 15, 1914, deposited by the appellant bank to its credit with the Bank of California of Tacoma, including which deposit there then stood upon the books of the latter bank to the credit of the appellant bank $19,988.02—the Bank of California of Tacoma being a reserve agent and correspondent of the appellant bank. That credit was, however, drawn upon in the regular course of business between the two banks, so that, when the appellant bank suspended and passed into the hands of the receiver, its balance with the Bank of California of Tacoma was but $1,585.36.

At the time the doors of the appellant bank were closed, which was not until September 19, 1914, it had actual cash on hand amounting to $27,899.81, and it had cash items of $4,539.63, a balance with its reserve agents amounting to $45,613.94, and a balance with banks not reserve agents of $21,486.16, making a total of $99,627.96. Notwithstanding the receipt by the appellant of the money for the appellee's warrants months before, and the disposition of it above detailed, it appears from the record that only six weeks before its failure this so trusted bank when applied to by the appellee's agent for information respecting the warrants, informed him that they had not been collected.

R. P. Oldham and R. C. Goodale, both of Seattle, Wash., for appellants.

Elmer M. Hayden, Maurice A. Langhorne, and Frederic D. Metzger, all of Tacoma, Wash., for appellee.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

ROSS, Circuit Judge (after stating the facts as above). We regard it as clear that the relation of cestui que trust and trustee existed between the appellee and the appellant bank. In the similar case of American Can Company v. Williams, 178 Fed. 420, 422, 101 C. C. A. 634, 636, the Circuit Court of Appeals for the Second Circuit said:

"The relation of cestui que trust and trustee undoubtedly existed between the plaintiff and the Fredonia Bank. The bank violated every duty which it owed the plaintiff. The proceeds of the plaintiff's drafts held by it or its agents constituted trust funds which might be followed into the hands of the receiver, if they could be traced."

Authorities to this effect are so numerous as to make their citation unnecessary.

In the present case the two checks dated April 14, 1914, aggregating $5,363.06, received by the United States National Bank of Centralia for certain of the warrants of the appellee and deposited by that bank in the Security Bank of Chehalis, was at once credited by the latter on an overdraft of the United States National Bank of Centralia, and was thus dissipated. While the latter bank thus got the benefit of the appellee's money to that extent in the payment of its own debt to the Security State Bank, obviously no part of it could have passed into the hands of the receiver of the insolvent bank, and as a matter of course it is impossible that any of it could be traced there.

In Schuyler v. Littlefield, Trustee of Brown & Co., 232 U. S. 707, 34 Sup. Ct. 466, 58 L. Ed. 806, it was distinctly adjudged by the Supreme Court that where one has deposited trust funds in his individual bank account, and the mingled fund is at any time wholly depleted, the trust fund is thereby dissipated, and cannot be treated as reappearing in sums subsequently deposited to the credit of the same account. It was in that case further adjudged, as it has been in many others, that one seeking to charge a fund in the hands of a trustee for the benefit of all creditors as being the proceeds of his property, and therefore a special trust fund for him, has the burden of proof, and if he is unable to identify the fund as representing the proceeds of his property, his claim must fail, as all doubt must be resolved in favor of the trustee who represents all creditors. This court also so held in the case of In re J. M. Acheson Co., 170 Fed. 427, 95 C. C. A. 597.

For that portion of the money of the appellee so used by her trustee in fraudulently paying in part its own debt to the Security State Bank of Chehalis, the court below therefore rightly refused her a preference over the general creditors of the insolvent bank.

The first money received by the United States National Bank of Centralia on the appellee's warrants, as has been seen, was on February 4, 1914, when it received the check on Coffman, Dobson & Co. for $1,-747.04, which was with other checks deposited in that bank by the United States National Bank of Centralia two days thereafter. The next day, February 7, 1914, the United States National Bank of Centralia had on deposit with Coffman, Dobson & Co., including the money of the appellee, a balance of $6,053.43, which credit balance was reduced from time to time until, on the 14th of April, 1914, the account of the United States National Bank of Centralia with Coffman, Dobson & Co. was overdrawn, so that the portion of the appellee's money deposited by the United States National Bank of Centralia with Coffman, Dobson & Co. was likewise completely dissipated more than five months prior to the failure of the former bank. It is true that there was evidence going to show that at the time of the deposit of the appellee's money with Coffman, Dobson & Co. by the United States National Bank of Centralia, the latter bank had in its vaults $66,381.40, cash items on hand $4,654.85, with reserve agents and banks not reserve agents $67,700.16, making a total of $138,736.41; but there is no evidence even tending to show that any of that trust money ever in fact reached the United States National Bank of Centralia, or ever passed into the hands of the receiver of its assets.

The court below, in holding as it did that the appellee is entitled to a preference over the general creditors of the insolvent bank for such of her money as was deposited with Coffman, Dobson & Co., based its ruling upon a presumption that the appellee's money was drawn from Coffman, Dobson & Co. by the United States National Bank of Centralia into its own bank, and was there wrongfully mingled with its own funds, and was on hand at the time its property passed into the hands of the receiver, citing in support of that conclusion the decision of this court in the case of Merchants' National Bank v. School District No. 8, 94 Fed. 705, 36 C. C. A. 432. In that case it appeared from the findings of the master that on July 1, 1896, certain coupon bonds of school district No. 8 of Meagher county, Mont., which it had issued in the aggregate sum of $14,000, became due and payable, and that prior to that date, and for the purpose of refunding and paying those bonds the school district had issued a second series of coupon bonds in the aggregate sum of $13,000, and had sold them to one Palmer, of Helena, Mont., for $13,056; that on the 11th of the same month Palmer deposited with the Merchants' National Bank of Helena, "as a special deposit to the credit" of the school district, the sum of $13,056 under an agreement between Palmer and the officers of the bank that that money should be paid out only in the redemption and payment of the prior coupon bonds which matured July 1, 1896, and that an account should be opened therefor, known as the "Redemption Account White Sulphur Springs School District Bonds";

that in pursuance of that agreement an account was opened upon the books of the bank designated "Bonds of Meagher County"; that the officers of the bank knew that the $13,056 so received from Palmer was the proceeds of the said refunding bonds, and that the same was applicable only to the redemption of the said matured bonds. On February 13, 1897, the bank became insolvent and its receiver took possession of its property and assets, among which was cash in the sum of $19,533, he having thereafter collected from other assets $200,000 more, the total of which was insufficient to pay in full the indebtedness of the bank. Not only was the deposit of those school funds made under and pursuant to the specific agreement above stated, but the money was deposited and received in direct violation of a provision of a statute of the state expressly prohibiting such deposit and receipt. In affirming the action of the trial court in awarding to the school district the full amount of its deposit as against the general creditors of the insolvent bank, this court said:

"The true nature of the transaction is disclosed by the facts. The money was to be treated as the funds of the school district, and not as the funds of the bank, and, in the light of that understanding, it is clear that the bank had no right to commingle the money with other funds. The fact that it did place it with other funds, and that at the time when its doors were closed there was not in its possession a separate fund in accordance with the understanding had when the deposit was made, cannot prejudice the rights of the appellee, so long as it can be shown that a sum of money equal to the amount so deposited remained in the possession of the bank, and was there when the receiver took possession. It will be presumed that of the funds so on hand $13,056 belonged to the appellee. Moreland v. Brown, 30 C. C. A. 23, 86 Fed. 257; National Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693; Capital Nat. Bank v. Coldwater Nat. Bank, 49 Neb. 786, 69 N. W. 115, 59 Am. St. Rep. 572. It is contended that the finding of the master, to the effect that Palmer deposited with the bank the sum of $13,056, is at variance with the facts as they are disclosed in the evidence. It appears from the evidence that the bonds were sold in Boston, and that the sum realized thereon was deposited with the National City Bank of Boston, which bank was the correspondent of the Helena bank. The Boston bank notified the Helena bank that that amount had been placed to the credit of the latter by a letter which was received by the bank at Helena on July 11, 1896. On July 3d the Helena bank had with the Boston bank a credit of $39,011.60, against which it drew on that day the sum of $10,000, leaving a balance of $29,011.60, which was not further reduced until July 13th, when a draft of $8,075 was drawn against it. On July 11, 1896, the Helena bank gave the personal account of Palmer a credit on its books of the full amount of the proceeds of the sale of the bonds. Thereupon Palmer gave the bank his personal check for $13,056, and requested that an account be opened, as found by the master. From these facts it is contended that the money which was realized on the sale of the bonds was never actually deposited with the Helena bank. It is not material in this case whether it was actually so deposited or not. It is undisputed that the money belonged to the school district, and that it was deposited with the bank's correspondent in Boston and that, upon the receipt of intelligence of such deposit, the Helena bank opened the account, and entered into the agreement which was indicated in the findings of the master. The Helena bank, if it had not then the money in its actual possession, had it under its control, and could lawfully, in the due course of banking, have paid it over to Palmer or to the school district. Instead of so paying the money, it chose to enter into the arrangement which was consummated. Neither the bank nor the receiver is now in a position to say that the money received by the bank's agent was not actually received by the bank. The question is not complicated by any failure on the part of the Boston bank to pay to the Helena

bank in full the amount which it received. The Helena bank received the money in the due course of business. In view of the receipt of that sum by its agent, and the arrangement which it made with Palmer on behalf of the school district, it will be deemed to have diverted from its funds in bank on July 11, 1896, the sum of $13,056, and to have placed the same to the credit of the school district. That sum became and was from that date a trust fund, subject to disbursement only upon the order of the school district. * * * The school district could not, and did not, part with its title to the money, nor did it lend the same to the bank. The general principles which govern this case were considered by this court in the cases of Spokane County v. First Nat. Bank of Spokane, 16 C. C. A. 81, 68 Fed. 979, and Moreland v. Brown, 30 C. C. A. 23, 86 Fed. 257. In the former case it was held that the depositor of a fund intrusted to a bank, by which it has been misapplied, is not entitled to a general lien upon the assets of the bank for the repayment thereof, but that he can follow the same, so far as it can be traced in the possession of the bank, either in its original form or in forms to which it has been converted, or into a general fund, with which it has been commingled, and that his right to recover it in the latter instance will depend upon whether or not a sum of money still remains in the possession of the bank equal to the amount so due him; it being the presumption of the law that, if moneys have been disbursed out of such fund, it was the money which the bank had the right to pay out, and not the money which was intrusted to it in a fiduciary capacity."

It is obvious that the facts of the case just referred to were very different from the facts of the present one. There the bonds were sold in Boston, and the money realized thereon deposited in a bank of that city which was the correspondent of the Helena bank, which Boston bank promptly notified the Helena bank that the amount so deposited had been placed to its credit, by letter received by the bank at Helena within 11 days after the sale made by the school district to Palmer, whereupon the Helena bank gave the personal account of Palmer a credit on its books for the full amount of the proceeds of the sale of the bonds, and Palmer gave that bank his personal check for the same amount, and the account was thereupon opened on the books of the bank in accordance with the specific agreement of the parties.

Here that portion of the trust money in question that was deposited by the United States National Bank of Centralia with Coffman, Dobson & Co., was so deposited February 6, 1914, with which bank it had on deposit the next day $6,053.43, the entire amount of which, however, including the trust money, it withdrew by April 14, 1914, and on which day its account with Coffman, Dobson & Co. stood overdrawn. This was, as has been said, more than five months before the United States National Bank of Centralia suspended and before its affairs passed into the hands of the receiver. There is no evidence even tending to show that a dollar of that portion of the trust money ever passed to the trustee, nor, indeed, is there any proof as to the purposes for which it was withdrawn from the bank of Coffman, Dobson & Co., or what was done with any of it. Upon such a state of facts, it is, we think, very clear that no presumption can be indulged that any of that money ever reached the vaults of the United States National Bank of Centralia, and certainly none that any of it ever passed into the possession of the receiver of its assets. The necessary conclusion is that the court below was in error in awarding the appellee a preference over the general creditors of the insolvent bank

in respect to that portion of the trust money deposited by it with Coffman, Dobson & Co., and dissipated on or before April 14, 1914. State Bank of Winfield v. Alva Security Bank, 232 Fed. 847, —— C. C. A. ——.

In Brennan v. Tillinghast, 201 Fed. 609, 614, 120 C. C. A. 37, 42, the Circuit Court of Appeals of the Sixth Circuit said:

"It is true that in the case of blended moneys in a bank account, consisting in part of trust funds, from which there have been drawings from time to time, it has been held, in favor of the cestui que trust, as a presumption of law, that the sums first drawn out were from the moneys which the tort-feasor had a right to expend in his own business, and that the balance which remained included the trust fund, which he had no right to use. In re Hallett's Estate, 13 Ch. D. 696, 727; Board of Commissioners v. Strawn [157 Fed.] at page 51 [84 C. C. A. 553, 15 L. R. A. (N. S.) 1100]. It is clear, however, in the first place, that this is a mere presumption, which will not stand against evidence to the contrary. Board of Commissioners v. Strawn [157 Fed.] at page 51 [84 C. C. A. 553, 15 L. R. A. (N. S.) 1100]."

What has been said with respect to the deposit with Coffman, Dobson & Co. applies equally to the deposit of that portion of the trust money made by the United States National Bank of Centralia with the Bank of California of Tacoma and thereafter withdrawn by the former bank, the purpose of such withdrawals and where the money went not being in any way shown by the evidence. The record does show, however, that such deposit of the United States National Bank of Centralia with the Bank of California of Tacoma was not entirely dissipated, but that there remained of such deposit at the time of the suspension of the former the sum of $1,585.36, which passed into the hands of the receiver of its assets, and as to which only the appellee is, in our opinion, entitled to a preference over the general creditors of the insolvent bank.

The cause is remanded, with directions to the court below to modify the judgment in accordance with the views above expressed, and, as so modified, it will stand affirmed.