McKINNEY v. UNITED STATES NAT. BANK OF CENTRALIA et al. *
REINHART et al. v. SAME. LANGLEY v. SAME.

(Circuit Court of Appeals, Ninth Circuit. May 21, 1917.)

No. 2879.

1. BANKS AND BANKING ⬳39—ORGANIZATION—PAYMENT OF CAPITAL IN CASH.

The organizer of the O. bank, intending it to have a capital of $50,000, as required by the state law, procured $2,000 in cash and $11,450 in notes for stock, and delivered them to the vice president and manager of the C. bank, with his own note for the balance of the $50,000, whereupon the C. bank issued a certificate of deposit for $50,000, upon the credit of which the O. bank opened its doors and commenced business. It was agreed that, on demand, the organizer of such bank would charge off the credit given to it by the C. bank. Held, that the capital was not paid in cash as required by law, and the O. bank's authority to open its doors and engage in business was fraudulently obtained.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 44–48.]

2. BANKS AND BANKING ⬳80(4)—INSOLVENCY—CLAIMS—PRIORITY.

Where deposits were made in the O. bank on the assumption that its capital was paid in cash, and by the O. bank were transferred to the C. bank, the money so received by the C. bank was a trust fund, and upon the insolvency of both banks the claim of the receiver of the O. bank therefor was entitled to preference over general creditors of the C. bank, as the O. bank had no right to receive such deposits, or to transfer them to the C. bank, and the C. bank, whose officers participated in the fraud, had no right to receive them.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 187, 188.]

3. BANKS AND BANKING ⬳80(4)—INSOLVENCY—CLAIMS—PRIORITY.

Where moneys received by the O. bank from depositors were paid to other banks by direction of the C. bank, the claim of the receiver of the O. bank therefor was only a general claim, not entitled to priority, as such moneys were not traceable into the possession of the receiver of the C. bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 187, 188.]

4. BANKS AND BANKING ⬳80(1)—INSOLVENCY—CLAIMS ALLOWABLE.

The manager and principal stockholder in the T. bank organized the O. bank, which was to be a feeder for the C. bank, and negotiated with

---

the manager of the C. bank for the sale to him of his stock in the T. bank. The T. bank, having money due it from the C. bank, called on the C. bank therefor, which directed the O. bank to furnish the money, which that bank did. *Held* that, whether or not the negotiations for the sale of the stock had been completed, the O. bank properly charged the advances to the C. bank, and on the insolvency of both banks the receiver of the O. bank had a claim against the receiver of the C. bank therefor, though the T. bank did not credit all of the moneys received from the O. bank to the C. bank.

[Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. §§ 184, 193.]

Appeal from the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Actions by Frank P. McKinney, as receiver of the Olympia Bank & Trust Company, in which C. S. Reinhart and another, stockholders of the Olympia Bank & Trust Company, for themselves and all other stockholders, intervened, and by Roy A. Langley, as receiver of the State Bank of Tenino, against the United States National Bank of Centralia and A. R. Titlow, as its receiver. From the judgment, the plaintiffs in each case and the interveners separately appeal. Affirmed in part, and modified and remanded in part.

Three banks of the state of Washington, all closely related to one another, closed their doors in the month of September, 1914—the State Bank of Tenino on September 19th, the United States National Bank of Centralia on September 21st, and the Olympia Bank & Trust Company on September 22d. The receiver of the Olympia bank brought a suit against the receiver of the Centralia bank for an accounting, in which suit C. S. Reinhart and C. W. Shaffer, stockholders of the Olympia bank, intervened. The accounting which was sought related to three claims: First, a claim for $36,550, for which sum credit was taken by the Centralia bank against the Olympia bank on the strength of two drafts, of date September 15, 1914, one for $12,500, and one for $24,050, drawn by Hays, the cashier of the Olympia bank, to the order of the Centralia bank, and drawn, as the complainant alleged, to pay the personal notes of Hays, and whereby he took the funds of the bank to pay his personal indebtedness to the Centralia bank, with the knowledge of the officials of the last-named bank, and at a time when that bank was insolvent; second, a claim for $10,000, a sum remitted by the Olympia bank to the Tenino bank at the request of the Centralia bank, for the purpose of paying money which that bank owed to the Tenino bank; third, a claim for $9,500, which the Centralia bank had on deposit of the funds of the Olympia bank and used to pay its own notes. The receiver of the Tenino bank brought a similar suit for accounting against the Centralia bank. The interveners Reinhard and Shaffer, stockholders of the Olympia bank, brought a bill on their own behalf and for all other stockholders, praying for an accounting between the Olympia bank and its receiver and the Centralia bank and its receiver, and that the cash balance found due the Olympia bank and all notes in the possession of the receiver of the Centralia bank obtained from the Olympia bank be decreed to be held in trust for the receiver of the latter bank, and delivered to his possession. The suits were consolidated, and upon the issues and the evidence the court below in its decree denied the claims of the receiver of the Olympia bank for $36,550 and for $10,000, but allowed and established the claim of $9,500 in favor of the Olympia bank, and as against the Centralia bank, and decreed that the Olympia bank be allowed a general claim against the receiver of the Centralia bank in the sum of $25,998.91, to be paid with other proved and allowed claims, and the court further decreed that a certain credit of $48,000, given the Olympia bank by the Centralia bank, be canceled and held void.

The facts in the case are briefly as follows: The Olympia bank, with a capital stock of $50,000, was organized on August 19, 1914, at the instance of W. Dean Hays, who prior thereto had been the manager of the Tenino bank. In July, 1914, Hays, who owned the majority of the stock of the Tenino bank, entered into an agreement with Gilchrist, the vice president and manager of the Centralia bank, whereby the latter was to purchase that stock, but the shares were never transferred. Gilchrist was also anxious to procure the organization of the bank at Olympia. At that time a large portion of the funds of the Centralia bank were loaned to lumbering concerns, and when the European war began the officials, in the anticipation of withdrawals, took steps to build up a larger reserve. They desired to start a bank at Olympia as a feeder. To secure the $50,000 capital required under the state law, Hays procured five subscribers to stock at Olympia to give him notes, aggregating $11,450, for stock, and other stockholders paid $2,000 in cash for stock. The notes were made to Hays, with the understanding that he personally was loaning the money with which to pay for stock. Gilchrist went to Hays at Olympia, and there Hays indorsed the notes, paid Gilchrist the $2,000 cash, and for the remainder of the stock gave his own notes, one for $12,500, and one for $24,050, aggregating $36,550, to the Centralia bank, and thereupon the latter bank, through its cashier, issued to the Olympia bank a certificate of deposit for $50,000. Upon the credit of that certificate the Olympia bank opened its doors and commenced business. With the understanding that the principal deposits of the Olympia bank were to be carried in the Centralia bank, Gilchrist furnished Hays $2,500 cash, and Hays subscribed for stock of the Olympia bank in the sum of $36,550. On August 15, 1914, Gilchrist went to Hays in Olympia and told him that the bank examiner, who was at Centralia to examine the Centralia bank, would object to the Hays notes for $36,550. Gilchrist then produced two drafts, one for $12,500, and one for $24,050, which he had prepared on the stationery of the Centralia bank, for Hays to sign. Hays testified that he signed the same with the agreement that, in case the examiner objected to his notes, Gilchrist would use the drafts, but that afterwards the prior agreement would be carried out, that the Centralia bank would carry the Hays notes, and that the drafts were not to be used unless the bank examiner objected to the notes. The drafts were not returned to the Olympia bank. One of them, the draft for $12,500, was found in the Centralia bank after it went into receivership. It was not marked paid. The other was not found.

No findings were made by the trial court. Its conclusion, as stated in the opinion, is in substance as follows: The stock of the Olympia bank was turned over to Gilchrist, manager of the Centralia bank, together with tne notes of the stockholders of the Olympia bank. The notes of Hays were, and were recognized as, worthless. There was a fraudulent conspiracy between Gilchrist and Hays to organize the Olympia bank without having its stock paid in cash as required by law, and each concealed from his associates and directors the nature of the transaction. The action of Gilchrist constituted a fraud upon the Centralia bank. Hays deceived his associates, who subscribed for stock in the Olympia bank, into believing that he was loaning them money on their notes with which their stock was being paid, while in fact he was leaving their notes and stock with Gilchrist, with the understanding that, as the notes were paid, the stock would be returned. No part of the capital required to be paid in cash by the law of Washington before the bank could transact business was paid in cash, and all that was obtained was a credit in the Centralia bank, saddled with an agreement that Hays would, on demand, charge off the credit given to the Olympia bank. The $36,550 stock subscribed by Hays was in no sense paid, and the credit had no existence in fact, and was only a color of credit. The conclusion of the trial court was that, if there had been a genuine authorized credit, Hays would have had no authority to take the money of the Olympia bank and apply it to the payment of his own note, but that the credit in this case had no existence in fact, and was only a color of credit.

P. M. Troy and R. F. Sturdevant, both of Olympia, Wash., for appellant McKinney.

Frank C. Owings, Thomas L. O'Leary, and Thomas M. Vance, all of Olympia, Wash., for appellant Langley.

C. Will Shaffer, of Olympia, Wash., for appellants Reinhart and Shaffer.

Fredrick Bausman, Robert P. Oldham, and Robert C. Goodale, all of Seattle, Wash. (Walter L. Nossaman, of Seattle, Wash., of counsel), for appellees.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge (after stating the facts as above). The account between the Olympia bank and the Centralia bank shows the following: That the Centralia bank, between August 20th and September 9th, and including those dates, received in cash from the Olympia bank $38,498.91, all of which was sent to Seattle and Tacoma banks at the instance of the Centralia bank, except $2,203.91, which was sent to the Centralia bank, and that between August 20th and September 17th the Olympia bank received from the Centralia bank $12,500. This result is reached after eliminating from one side of the account the fictitious charge of $48,000 against the Olympia bank, representing the color of credit obtained in the Centralia bank by that bank, and from the other side of the account $12,500 and $24,050, which took the form of drafts for the payment of Hays' indebtedness on his notes, and $9,500, representing the three Blumauer notes, which never came into the possession of the Olympia bank. With the elimination of these false items, the balance stands in favor of the Olympia bank in the sum of $25,998.91, as found by the court below.

[1-3] We agree with the court below that the authority of the Olympia bank to open its doors and engage in a banking business was fraudulently obtained, that its capital was not paid in cash as required by law, and that the cashier and manager of the Centralia bank participated in the fraud. The receiver of the Olympia bank represents, among other interests, the interests of the depositors therein. Those depositors placed their money in the Olympia bank in good faith, on the assumption that its capital was paid in cash. Hays knew that the capital stock was not paid, and so did the officers of the Centralia bank. Hays had no right to receive the deposits, and no right to transfer them to another bank; nor had the Centralia bank the right to receive them. It follows that the money which the Centralia bank did receive of those deposits, so far as it went into that bank and into the hands of the receiver is a trust fund entitled to preference over general creditors. But the difficulty in the way of the restitution of the money to the depositors of the Olympia bank is that out of their deposits but $2,203.91 were sent directly to the Centralia bank. All the remainder of the money was sent to Seattle and Tacoma banks under instructions from the Centralia bank. For that money, $23,795, the receiver of the Olympia bank is entitled only to a general

claim against the Centralia bank, since none of it is traceable into the possession of the receiver of that bank. United States National Bank of Centralia v. City of Centralia, 240 Fed. 93, —— C. C. A. ——; Titlow v. McCormick, 236 Fed. 209, 149 C. C. A. 399.

[4] The ground on which the court below disallowed the $10,000 claim of the Olympia bank is not disclosed in the record. The facts are these: On or about September 12, 1914, the Tenino bank called on the Centralia bank for money. The latter bank directed the Olympia bank to furnish the money, which it did. At that time, according to the decided weight of the testimony, the Centralia bank was indebted to the Tenino bank. It is true that Gilchrist testified that the Tenino bank's account with the Centralia bank was frequently overdrawn, and that, when the first call for $6,000 was made by the Tenino bank, he knew that that bank "had no $6,000 with us," and that Dysart gave similar testimony from hearsay. But on the other hand, the testimony of Blumauer, manager of the Tenino bank, is explicit and definite. He testified that the daily statements of the Tenino bank showed that on September 10th the Centralia bank owed the Tenino bank $8,000; on the 12th, $9,000; on the 14th, $7,299; on the 15th, $7,000; on the 16th, $11,000; on the 17th, $13,000; and on the 18th, $9,000; and that, according to the books of the Tenino bank, there never was a balance between September 10 and September 20, 1914, with less than $7,000 or $8,000 owing from the Centralia bank. The sums so sent from the Olympia bank were charged to the Centralia bank in the Olympia bank's ledger, September 12th, $6,000, and September 15th, $2,000 money sent to Seattle for the Tenino bank, and September 18th, $2,000 coin sent to Tenino, and the Tenino bank gave the Centralia bank credit for them, but they did not appear in any way on the books of the Centralia bank. No account with the Tenino bank was opened on the books of the Olympia bank. The request for the remittance of these funds came by telephone from Gilchrist, who asked that money be sent to Tenino. Gilchrist testified that, when Blumauer· called for funds to protect drafts that were going to protest, he called Hays on the telephone and told him that it was "up to him" to see that the drafts were protected at once, and Gilchrist testified that Hays had no authority to charge the remittances to the Centralia bank, his testimony conveying the intimation that he considered that, inasmuch as Hays was the principal stockholder of the Tenino bank, it was "up to him" to look after the drafts of that bank. George Dysart, a director and the vice president of the Centralia bank, testified that he was present when Blumauer called for one of these remittances of $2,000, and that he told Blumauer that the Centralia bank would send him no money; "that they should call up Mr. Hays; that it was his bank, and for him to look after it." Dysart evidently was not informed that Gilchrist had agreed to purchase Hays' stock in the Tenino bank. Hays testified that:

Gilchrist said "he would buy it at the price I mentioned, providing that, after an examination, conditions were found all right—note all right. He and Mr. Daubney came up there and made an examination of the records, and he said he would take it, and he sent Mr. Daubney up there, and I went to Olympia to organize this bank, and did organize it."

Again he testified:

"He and Mr. Daubney came up there, and looked over the paper, and didn't object to it. They thought that some of it might be slow, but they didn't refuse it, and it was after that examination that he agreed to take the stock."

Daubney took the place of Hays in the Tenino bank. For that purpose he left his employment in the Union Loan & Trust Company of Centralia, a company closely allied with the Centralia bank. Gilchrist testified:

"We had sent Mr. Daubney up to assist in managing the Tenino bank."

Gilchrist did not deny that he had agreed to purchase Hays' stock, but he said that the negotiations were pending, and not consummated. It thus appears that Gilchrist was interested in the welfare of the Tenino bank. However that may be, the controlling facts are that the Centralia bank was indebted to the Tenino bank. The Olympia bank was not. The Tenino bank called upon the Centralia bank for funds, and Gilchrist instructed the Olympia bank to remit funds to Seattle and to Tenino for the benefit of the Tenino bank.

It is true that on the books of the Tenino bank, according to the testimony of Blumauer, only the first $6,000 of the funds so furnished by the Olympia bank were credited to the Centralia bank. Blumauer testified that:

As the Tenino bank had money due it from the Centralia bank, it asked the Centralia bank to see that it got the money there, "and we got it through the United States National Bank of Centralia; they telling us that they would have it there to our credit, and have it sent by the Olympia bank, although the Olympia bank did not owe us the money."

He further testified that:

The $2,000 remittances were similar transactions, and when the money was sent he did not know how to credit it; "it was due from one bank, and we got it from the other, and I had to make some entry to offset that, so we wouldn't pay over that $2,000 and not know who to credit it to, I had to credit it to one or the other, without any instructions. I knew it would be straightened out between Mr. Gilchrist and Mr. Hayes. As long as we got the money it didn't make any difference to us who we got it from, but as I said before it wasn't due to us from the Olympia bank—it was due us from the Centralia bank."

The funds so remitted were properly chargeable against the Centralia bank, as evidencing an indebtedness from that bank to the Olympia bank, and it follows that the claim of the Olympia bank against the Centralia bank should be allowed as against its assets.

As to the suit of the receiver of the Tenino bank against the receiver of the Centralia bank, we find no error in the decree of the court denying the claim of the complainant based upon certain drafts, aggregating the sum of $2,500, which were issued by the Tenino bank to the Centralia bank, directing it to pay a Portland bank, and to charge the amounts thereof against the Tenino bank's account, nor in denying the claim in the sum of $5,000 charged to the Tenino bank by the Centralia bank on account of Hays' note to the Centralia bank.

We think that the decree of the court below should be so modified as to allow the claim of the receiver of the Olympia bank for $10,000 as against the assets of the Centralia bank, and the further sum of

$23,795 as against those assets, and the sum of $2,203.91 as a preferred claim to be paid in full, and to award said receiver costs in the court below.

The cause is remanded to the court below, with instructions so to modify the decree. In other respects the decree is affirmed.