## MECHANICS & METALS NAT. BANK OF CITY OF NEW YORK v. BUCHANAN.

(Circuit Court of Appeals, Eighth Circuit. April 28, 1926.)

No. 7105.

1. **Banks and banking** ⟨⟩80(7)—**In order that trust fund may constitute preferential claim against funds of national bank in hands of receiver, it must appear that funds were increased by receipt thereof.**

In order that a trust fund may constitute preferential claim against funds of national bank in hands of receiver, it must appear that funds in his hands were increased or benefited, and recovery is limited to increase of benefit.

2. **Banks and banking** ⟨⟩80(7)—**Proceeds of cashier's checks issued by bank on order of state bank commissioner, and carried in lieu of notes theretofore as signed as collateral, not held recoverable by assignee as trust fund, since assets were not increased nor were any funds set apart.**

Where, after bank had assigned notes as collateral security, it issued cashier's checks payable to itself, charged their amount to accounts of its managing officers, and carried them among assets in lieu of notes, pursuant to order of bank commissioner, *held* that, on bank's insolvency, assignee was not entitled to proceeds of such cashier's checks as a trust fund, since assets of bank were not increased thereby, nor were any funds set apart which came into hands of receiver.

Appeal from the District Court of the United States for the Eastern District of Oklahoma; Robert L. Williams, Judge.

Suit by the Mechanics & Metals National Bank of the City of New York against J. C. Buchanan, as receiver of the Central State Bank of Muskogee. Decree for defendant, and plaintiff appeals. Affirmed.

Paul Pinson, of Muskogee, Okl. (Frank M. Patterson, of New York City, and D. H. Linebaugh, of Muskogee, Okl., on the brief), for appellant.

M. W. McKenzie, of Oklahoma City, Okl. (Clarence J. Mull, of Muskogee, Okl., and Gentry Lee, of Oklahoma City, Okl., on the brief), for appellee.

Before STONE, VAN VALKENBURGH, and BOOTH, Circuit Judges.

VAN VALKENBURGH, Circuit Judge. February 27, 1922, one W. C. Smith executed and delivered to the Central State Bank of Muskogee a promissory note, due September 1, 1922, in the principal sum of $20,000, as collateral security for an indebtedness by way of rediscount with said bank in the approximate sum of $75,000. June 2, 1922, the Central Auto Company, a corporation, executed

and delivered to said Central State Bank a promissory note in the principal sum of $18,000, due September 1, 1922, as collateral security for an indebtedness of approximately $75,000. On the 11th day of August, 1922, the said Central State Bank, a corporation, engaged in the banking business under the laws of Oklahoma, indorsed and assigned to appellant these two notes as collateral security for its indebtedness to appellant. Prior to this assignment, to wit, July 7, 1922, the bank commissioner of Oklahoma made an examination of the condition of the said Central State Bank of Muskogee, and on the latter date, pursuant to an order of the bank commissioner, the Central State Bank issued a certain cashier's check, payable to the order of "ourselves—twenty thousand ($20,000.00) dollars, C. T. Thompson, President," and this check was carried among the assets of the bank in lieu of and for the said note of W. C. Smith for the sum of $20,000, as aforesaid. This was accomplished on the books of the bank by charging the accounts of one Clyde T. Thompson and one J. A. De Witt with said sum.

This situation continued until August 1, 1922, when this same cashier's check was indorsed "Cr. W. C. Smith, Spl." There was then entered to the credit of W. C. Smith, special account, the sum of $20,000, which remained to the credit of W. C. Smith upon the individual ledger of the individual depositors in said bank until August 18, 1922, on which date the bank was declared to be insolvent and was placed in charge of appellee, as receiver, under the authority of the bank commissioner and the banking board of the state of Oklahoma. On the same date, to wit, July 7, 1922, pursuant to the same order of the bank commissioner, the Central State Bank wrote a cashier's check payable to the order of "ourselves, eight thousand ($8,000.00) dollars, C. T. Thompson, President." This cashier's check was carried as an asset of the bank until about the said 11th day of August, 1922, when it was canceled and marked "Paid," and a special deposit was made to the credit of the Central Auto Company. This cashier's check was charged to the account of Clyde T. Thompson and J. A. De Witt, as depositors in said bank, and these accounts on the books of the bank remained in this same condition until August 18, 1922, at which time the bank commissioner took possession of said bank as aforesaid. The said Clyde T. Thompson and J. A. De Witt were the acting managing officers of the Central State Bank and depositors therein.

From the agreed statement of facts it appears that no money, in cash, nor property of any nature, was actually paid to the Central State Bank for said cashier's checks by the said Smith or the said Central Auto Company, nor by any one for them, but the same were purported to be paid by crediting their individual accounts in said Central State Bank in said amounts, and charging the accounts of Thompson and De Witt. The object of these acts was obviously an attempt to charge off $28,000 of the $38,000 represented by the two notes above described, pursuant to the order of the bank commissioner, who was dissatisfied with these loans as tending to impair the financial condition of the bank. It is agreed that the receiver did not know the true condition of these accounts at the time he took possession of the bank, nor for some time thereafter, and that appellant had no knowledge of the issuance of the cashier's checks aforesaid, nor of the entries made upon the ledgers of the bank to the credit of the special accounts of Smith and the Central Auto Company.

Appellant brought suit against appellee, as receiver of the insolvent Central State Bank, claiming that the special deposits aforesaid became and were the property of appellant as the holder of the notes with relation to which said special deposits were created. It therefore prayed judgment for the aggregate sum of $28,000. Because of the trust relationship thereby asserted, the case was transferred to the equity side of the docket. The court found the issues in favor of appellee. From the decree embodying this finding, this appeal is brought.

It is conceded that no payments in money were in fact made; therefore the funds of the bank were not augmented in any way. The original notes were not taken up in whole or in part, but were left in the possession of appellant, which had no notice of the transaction prior to insolvency. A mere bookkeeping transfer was made, which would have been effective, perhaps, if the bank had continued as a going concern, but by which the funds of the bank were in no respect augmented. It consisted merely of a shifting of credits on the books of the bank. The rule applicable is thus announced in Beard v. Independent District of Pella City (C. C. A. Eighth Circuit) 88 F. 375, 31 C. C. A. 562.

[1] "In order that a trust fund may constitute a preferential claim against the funds of a national bank in the hands of a receiver, it must appear that these funds were actually augmented by the receipt of the trust fund. And if the trust fund was created merely by a check on the same bank drawn by a general

depositor in favor of the trustee, the amount of which was then shifted to the latter's credit, there is no right to a preference." It must at least appear that the funds in the hands of the receiver were increased or benefited by the proceeds, and the recovery is limited to the extent of this increase or benefit, and in such case the specific thing parted with, or its proceeds, must be sufficiently identified to be returned. City Bank v. Blackmore, 75 F. 771–773, 21 C. C. A. 514.

The cases where such an equitable lien has been recognized are in general where a collection is made by the receipt of money or property which augments and increases the funds of the insolvent bank; but where such collection is made by charging the amount to the account of the debtor, who is a depositor in the bank, the assets of the bank are not augmented thereby, since no money passes to the insolvent bank, and the customer has no preferential claim on the assets in the hands of the receiver. 3 Ruling Case Law, par. 268, p. 639.

In Empire State Surety Co. v. Carroll County, 194 F. 593, 114 C. C. A. 435, this court held that the deposit of checks of third parties, which are credited to the depositor and used by the bank to pay its debts, bring no money into its cash, and lay no foundation for preferential payment to the depositor; because checks of third parties on the bank, with which they are deposited, which are paid by crediting the bank and charging the drawers on its book, do not increase the cash in the bank and present no basis for preferential payment.

Cases which concern the application of mutual debts and mutual credits in bankruptcy can have no application here. In Anheuser-Busch Brewing Ass'n v. Clayton (C. C. A. Fifth Circuit) 56 F. 759, 6 C. C. A. 108, it was held:

"A bank holding a draft for 'collection and returns,' which accepts a check of the drawee, one of its depositors, and, without separating the amount from the general mass of its moneys, charges the same to the drawee, and credits the drawer on its books, holds the money as agent for the drawer, and not as trustee, and after the bank becomes insolvent the drawer is a mere general creditor, and not entitled to priority of payment out of the bank's assets." See, also, Titlow v. McCormick (C. C. A. Ninth Circuit) 236 F. 209, 149 C. C. A. 399.

In Mule & Horse Co. v. Americus National Bank (D. C.) 230 F. 738, and Drainage District v. First National Bank (D. C.) 3 F. (2d) 648, cited by counsel for appellant, the funds of the banks were actually increased by money paid in.

In American Can Company v. Williams (C. C. A. Second Circuit) 178 F. 420, 101 C. C. A. 634, the plaintiff sought to recover from the receiver of an insolvent bank the proceeds of drafts sent to the bank for collection; some of the drafts had been paid to the bank by the drawee's checks on outside banks, made payable to the collecting bank; others were paid by the drawees out of their own accounts as depositors of the collecting bank, the funds being charged against such accounts. The assets of the collecting bank which came into the hands of the receiver exceeded the amount of plaintiff's claim, but it was not shown that the money represented the proceeds of any of the drafts. In other words, there had been no segregation from the general funds of the bank. The court said:

"If the plaintiff's contention be well founded, and to follow misappropriated moneys it is only necessary to show that a receiver has, and that the trustee had, assets, the rule is simply that a demand for such moneys is a preferred claim against any substantial estate. To adopt this view is to do away with all the equitable principles out of which the right to follow trust funds grew."

So here the answer simply admits that the receiver is in possession of all the tangible assets of the bank. There is no showing that the funds represented by this bookkeeping credit were ever segregated from the general mass of the funds of the bank. The bank neither received nor paid out any money, and a claim now exists for the full amount of the notes; but that claim is a general one, and insusceptible of being followed, either in kind or by substitution, into the hands of the receiver.

In State Bank of Winfield v. Alva Security Bank, 232 F. 847–849, 147 C. C. A. 41, this court said:

"To adopt that theory [as to a fund] is to re-establish under a mere bookkeeping disguise the exploded notion that a trust fund may be recovered, if it can be traced into the general assets of an insolvent estate. * * * The rule is accurately stated and numerous authorities cited by this court in the first case referred to [Empire State Surety Co. v. Carroll, 194 F. 593, 114 C. C. A. 435] as follows: 'It is indispensable to the maintenance by a cestui que trust of a claim to preferential payment by a receiver out of the proceeds of the estate of an insolvent that clear proof be made that the trust property or its proceeds

went into a specific fund or into a specific identified piece of property which came to the hands of the receiver.' "

[2] The case made by appellant falls short of this requirement. Transactions upon which it relies consisted of a mere shifting of credits on the books of the insolvent bank. The assets of that bank were not increased thereby, nor were any funds set apart which, or any part of which, came into the hands of the receiver.

It follows that the decree below must be affirmed.

It is so ordered.