### OLIVE v. ARMOUR & CO., et al.

(Circuit Court of Appeals, Fifth Circuit. February 9, 1909.)

No. 1,807.

BANKRUPTCY (§ 68*) — INVOLUNTARY PROCEEDINGS—PERSONS WHO MAY BE ADJUDGED BANKRUPT—FARMERS.

A person engaged chiefly in farming, and therefore exempted from proceedings in involuntary bankruptcy by Bankr. Act July 1, 1898, c. 541, § 4b, 30 Stat. 547 (U. S. Comp. St. 1901, p. 3423), cannot commit an act of bankruptcy, and does not become subject to such proceedings, by making a general assignment for the benefit of creditors.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 68.*

What persons are subject to bankruptcy law, see note to Mattoon Nat. Bank v. First Nat. Bank, 42 C. C. A. 4.]

Appeal from the District Court of the United States for the Southern District of Georgia.

Boykin Wright and Samuel H. Myers, for appellant.

Austin Branch, for appellees.

Before PARDEE and SHELBY, Circuit Judges, and BURNS, District Judge.

BURNS, District Judge. On January 15, 1908, Armour & Co., doing business as Armour Fertilizing Works, the Hogrefe Hardware Company, and Mrs. Morton, as administratrix of the estate of her husband, filed petition against John T. Olive, in the usual form, seeking to have him adjudged a bankrupt upon the ground that within four months prior thereto (December 16, 1907) the defendant committed an act of bankruptcy, in that he made a general and voluntary assignment of all his assets, of every kind and description, for the benefit of his creditors. Said petition contains the further allegation that the alleged bankrupt is neither a wage-earner, nor a person chiefly engaged in farming or the tillage of the soil. On January 23, 1908, the defendant filed answer alleging that for the past two years he was chiefly engaged in farming, and therefore exempt from involuntary bankruptcy. For further plea and answer he averred that the indebtedness to Armour & Co. was for fertilizers for use upon his farms, that the indebtedness to the Hogrefe Hardware Company was for plows and other implements and the debt to the remaining creditor was balance of purchase money due upon a horse, which horse was used in furtherance of farm work, and that all of said creditors knew at the time of creating said indebtedness

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

that the articles so purchased were intended for farm purposes. On February 5, 1908, the issues and evidence were submitted to the court, and the same day Olive was adjudged a bankrupt within the intent and meaning of the act of Congress relating to bankruptcy, from which judgment defendant prosecutes appeal, and assigns the following error: The court having found and adjudged the facts to be that Olive, the alleged bankrupt, on the 16th day of December, 1907, made a general assignment for the benefit of his creditors, and that at said time he was engaged chiefly in farming, the court erred in holding, as matter of law, that Olive, by executing said assignment, thereby ceased to be a person engaged chiefly in farming, eo instanti divesting himself of any claim of exemption he might set up in a bankruptcy court.

Looking to the opinion contained in the record, we find the further statement:

"When he assigns his farming property he quits farming, and that property is subject to his debts, just like the property of any other man. His chief occupation is not then farming, but other pursuits. I am satisfied, so far as the evidence is concerned, that he was principally engaged in farming up to the time of the assignment. I have an impression that even though this gentleman (Olive) was largely engaged in farming, or chiefly engaged in farming, if he made an assignment of all of his property—which assignment itself would be a violation of the bankruptcy law—he would not be a farmer in contemplation of the bankruptcy act."

The record discloses that the creditors made application for the appointment of a receiver for the estate of the alleged bankrupt, the application containing the following recital:

"That the property of the said Olive consists to a very large extent of farm properties, in the cultivation of which there are engaged large numbers of tenants, croppers, and wage hands, and on which are at work large numbers of horses, mules, etc. Contracts have been entered into with said tenants for the planting and raising of crops during the current year. It is believed that the farming operations, if conducted during the current year as planned, will prove remunerative to the estate."

The above statement appears to support the finding of the court below that Olive was "chiefly engaged in farming," and that the farming plans for the current year were well matured.

The defendant testified in support of the allegation in his answer to the effect that he was chiefly engaged in farming. The evidence in support of the contention of petitioners, that Olive was not within the excepted class, and therefore a proper subject for the cognizance of a court of bankruptcy, is to the effect that he had a license to practice law—had out his shingle—held stock in a laundry concern, and, formerly, some interest in a defunct wood and coal business. The evidence shows further that within two years prior to the institution of this suit he had two cases in which parties desired a cancellation of matrimonial vows, and, not being able to give these matters personal attention, the interests of the two clients were conserved by other counsel.

A ray of light upon the occupation of Olive appears in the testimony of this witness. Hon. Henry Hammond, being offered, testified substantially as follows:

"I am judge of the superior courts, Augusta circuit, and have been for four years. I know Mr. Olive very well. Am acquainted with him intimately, and have been for a number of years. I am acquainted with his farming operations in Columbia county, and acquainted with him as a practitioner, as far as anybody could be said to be acquainted with a thing that did not exist. He has had in my court only one case, which he won by the way he struck the jury. I am also acquainted with him as a farmer, having visited his farm on three occasions, and on horseback rode over his entire farm on all three of those occasions. We have four distinguished farmer-lawyers at our bar. Mr. Olive is really a most interesting farmer; has many acres under cultivation, magnificant barns, engines, and equipments of every kind for a farm. He has established kindly relations with his neighbors, and has really revolutionized things. Am somewhat of a farmer myself, but do not agree with all of his plans and investments; still I think he has done a wonderful work, and is doing it. As to his presence in the law and farming business, they are not to be considered in the same breath by any one who knows him in those two capacities. He never practiced in the courts. I think I never saw him in an actual trial but once in the four years I have been on the bench; that was a piano case, and he had his foot on the soft pedal all the way through. Q. In which of the two occupations, law or farming, do you regard him as chiefly engaged? A. Farming, overwhelmingly."

The clerk of the city court and the two justices of the peace were offered to prove that Mr. Olive had neither clients nor retainers in their respective courts, and they abundantly support this proposition. The evidence further discloses that all articles purchased from petitioning creditors were for the purposes of the farm, such as fertilizers, plows, and other implements. The evidence as to the chief occupation shows that the alleged bankrupt was born upon a farm, the son of a farmer, and, the law venture proving unsuccessful, he returned to the simple life, intending to make a good farmer out of the poor lawyer.

The order of adjudication is based solely and alone upon the fact that, having assigned all of his estate, he thereby committed an act of bankruptcy. This is one of the recognized grounds of the act upon which the creditors may move against the debtor, but has no application to the facts in this case, for the reason that those within the excepted and favored class, the farmer and wage-earner, can commit no act of bankruptcy. They are immune from all proceedings against them in courts of bankruptcy, and that the Congress so intended is without healthy disputation. The law provides (Act July 1, 1898, c. 541, § 4, 30 Stat. 547 [U. S. Comp. St. 1901, p. 3423]) that any person who owes debts shall be entitled to the benefits of this act as a voluntary bankrupt. Subdivision "b" provides:

"That any natural person, except a wage earner, or a person engaged chiefly in farming, or the tillage of the soil, may be adjudged an involuntary bankrupt, upon default, or an impartial trial, and shall be subject to the provisions and entitled to the benefits of this act."

From a casual inspection of the above recitation it follows that the wage-earner and farmer can invoke the benefit of the law, but the creditor, by the very terms of the act, is denied the right to proceed against this debtor class in courts of bankruptcy. His remedy is elsewhere. It is full and complete by attachment and execution, levy and sale.

If the act of bankruptcy complained of in this case, namely, the general assignment, should be the basis of the adjudication, it would be a practical nullification of the law as to a person "engaged chiefly in farming." It has been repeatedly held that the avocation of a bankrupt after the act of bankruptcy is not controlling, and that a person "chiefly engaged in farming," who made a general assignment for the benefit of his creditors, is not subject to the provisions of the bankrupt act.

The receiver having been appointed upon the application of the creditors and the consent of the debtor, the property should be charged with the costs of administration, and thereupon delivered to the assignee.

For the reasons stated, the judgment of the district court will be reversed, and it is so ordered.