UNITED STATES NAT. BANK OF CENTRALIA et al. v. CITY OF
CENTRALIA.

(Circuit Court of Appeals, Ninth Circuit. February 13, 1917. Rehearing De-
nied March 19, 1917.)

No. 2821.

1. DEPOSITARIES ⬦10—BONDS—AMOUNT—INSUFFICIENCY—EFFECT.
   Pierce's Code Wash. 1912, tit. 77, §§ 681, 683, require municipalities
to designate one or more banks in the county where the city is located
as a depositary or depositaries of funds required to be kept by the city
treasurer, but provide that, before any such designation shall entitle the
treasurer to make deposits in such bank, the bank so designated shall file
with the comptroller or town clerk a surety bond in the maximum amount
of the deposits, or shall deposit bonds with which to secure the same. A
city having negotiated a sale of bonds to raise funds to be expended upon
its water system, the treasurer delivered the bonds to the bank designated
as the city depositary, and which had given a bond in the amount of $10,-
000, with instructions to forward and collect the draft. The bank, though
the proceeds from the bonds greatly exceeded $10,000, permitted the same
to be placed to its credit by its correspondent, giving the treasurer credit
on its books for the amount. *Held* that, as the bank knew of the pur-
pose for which the bonds were to be sold, and was not an authorized de-
positary, it was guilty of a violation of the law, rendering it liable as a
trustee for such funds.
   [Ed. Note.—For other cases, see Depositaries, Cent. Dig. §§ 23–26.]

2. BANKS AND BANKING ⬦80(7)—INSOLVENCY—TRUST FUNDS—LIABILITY.
   Where a bank, having become liable as a trustee for moneys wrong-
fully commingled with its own funds, became insolvent and a receiver
was appointed, the trust may be impressed upon funds so misappropriated
to the extent that they can be traced, either in their original or substi-
tituted form, into funds which came into the possession of the receiver;
the cestui to that extent being entitled to a preference over other creditors.
   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 191.]

3. BANKS AND BANKING ⬦82(7)—TRUST FUNDS—EVIDENCE—SUFFICIENCY.
   In a suit against the receiver of an insolvent bank, which, without
authority of law, permitted the proceeds of a draft for the purchase price
of municipal bonds deposited for forwarding and collection to be credited
to its account by its correspondent, evidence *held* insufficient to show that
any such proceeds, either in the original or substituted form, were repre-
sented by funds which came into possession of the receiver, and hence no
trust could be imposed upon such funds.
   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 209.]

4. BANKS AND BANKING ⬦80(7)—TRUST FUNDS—RECEIVERS.
   A bank, authorized only to collect a draft for the purchase price of
city bonds, allowed its correspondent to deposit the funds to its credit,
though such deposit was in violation of law; the bank not having given
bond to secure a deposit for the same. The correspondent applied a por-
tion of such proceeds on the bank's overdraft. *Held* that, there being no
showing that any of such proceeds came into the hands of the receiver,
such application by the correspondent furnishes no basis for giving the
municipality priority in funds received by the receiver on the theory of a
trust, for it must be assumed that the correspondent dealt with the pro-
ceeds of the bonds on the understanding that the bank had complied with
the law.
   [Ed. Note.—For other cases, see Banks and Banking, Cent. Dig. § 191.]

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Suit by the City of Centralia, a municipal corporation, against the United States National Bank of Centralia, a banking association, and A. R. Titlow, as receiver of said bank. From a decree for complainant, defendants appeal. Reversed and remanded, with directions to dismiss.

The city of Centralia brought a suit against the United States National Bank of Centralia and A. R. Titlow, receiver of said bank, the purpose of which was to impress a trust upon funds in the receiver's hands and to obtain a preference over the general creditors of the insolvent bank. The said bank will be designated herein the Centralia Bank. At the time when the transactions referred to in the suit occurred, the law of the state of Washington (title 77, §§ 681, 683, Pierce's Code of 1912) required that a city of the class of Centralia shall, upon a majority vote of its city council, designate one or more banks in the county where the city is located as depositary or depositaries of the moneys required to be kept by the city treasurer, but that before any such designation shall entitle the treasurer to make deposits in such bank, the bank so designated shall file with the comptroller or town clerk of the city, a surety bond to the city in the maximum amount of deposits designated by said treasurer to be carried in such bank, or in lieu of such bond shall deposit with the treasurer certain described school, county, or state bonds or warrants, or United States bonds, and shall also file with the comptroller or town clerk a contract binding the bank to pay not less than two per centum on the average daily balances, where such balances exceed $1,000, of all municipal funds kept by such treasurer in said bank while acting as such depositary. The Centralia Bank had been designated a depositary of the city's public moneys, and had given a bond in the sum of $10,000 to the city as required by statute.

Prior to July, 1914, the city had authorized the issuance of bonds to raise funds to be expended upon its water system, and to be applied to no other purpose. It had negotiated a sale of the bonds to Carstens & Earles, bond buyers, of Seattle, and on or about July 10th the city treasurer delivered the last of the bonds to the Centralia Bank, with a draft on Carstens & Earles, with instructions to forward and collect. The cashier of the Centralia bank knew the nature and purpose of the bonds, and caused an entry to be made indicating that the same were to be credited to the account of Mason, the city treasurer. The bonds and the draft were forwarded to the bank's regular correspondent and reserve bank in Seattle, the National Bank of Commerce, which will be designated herein the Seattle Bank. On or about July 13, 1914, the draft was paid to the Seattle Bank, and that bank gave the Centralia Bank credit for $50,911.88, the amount collected, and advised the Centralia Bank of the credit. On July 13th the Centralia Bank entered in its books a credit to the treasurer of Centralia for the amount so collected, and charged a like amount against the Seattle Bank. At that time the city treasurer was absent from Centralia, but when he returned, and learned that the bank had credited him with this amount, he notified the president and manager of the Centralia Bank that it must give an additional bond on account thereof, as required by law; but the bond was not given.

On July 13th the total deposits of the Centralia Bank with the Seattle Bank amounted to $55,069.77. Before that time, and from July 11th, the account of the Centralia Bank with the Seattle Bank had been overdrawn $11,071.64. By the deposits of July 13th the overdraft was wiped out, and a balance was left of $44,998.13. In the ordinary course of business the balance in the Seattle Bank was reduced by withdrawals on drafts from the Centralia Bank, and by payment of checks on the Centralia Bank drawn by depositors of that bank, and by drafts drawn by the Centralia Bank in favor of other correspondent banks and reserve agents, so that on July 22, 1914, as shown by the books of the Seattle Bank, the account was again overdrawn.

When the Centralia Bank closed its doors on September 19, 1914, it had in its vaults $32,439.44, which came into the hands of the receiver. Between July 13th and September 19th it had at all times with its reserve agents and in its vaults more than $50,911.88. After the bank passed into the control of the receiver, the city received $10,000 on the bond which had been given by the Centralia Bank, and credited sufficient thereof to extinguish a certain other claim of the city on account of a special deposit of $2,641.21, and credited the remainder of the $10,000 upon the account for $51,911.88. The city treasurer received from the Centralia Bank no passbook or other evidence of the bank's indebtedness on account of the money received on the sale of the bonds.

The court below found that the officers of the Centralia Bank knew the purpose for which the bonds had been issued, and that the moneys collected thereupon were trust funds, which the city treasurer could hold only as a public officer, and that the same could not be lawfully used for any purpose other than the purchase and improvement of the city's system of waterworks; that $44,938.13 of the proceeds of the sale of the bonds had been traced into the hands of the Centralia Bank, and its receiver; and that the appellee is a preferred creditor to that amount. And thereupon a decree was entered for the payment of said sum to the appellee.

R. P. Oldham and R. C. Goodale, both of Seattle, Wash., for appellants.

William R. Lee, City Atty., of Centralia, Wash., and Samuel H. Piles and James B. Howe, both of Seattle, Wash., for appellee.

Before GILBERT, MORROW, and HUNT, Circuit Judges.

GILBERT, Circuit Judge (after stating the facts as above). [1, 2] The Centralia Bank, in permitting the proceeds of the bonds to be placed to its credit in the Seattle Bank, violated the plain provisions of the law. It had no right to use the money, or to commingle it with its own funds, or to place it to its credit in another bank. Nat. Bank v. School District No. 8, 94 Fed. 705, 36 C. C. A. 432; Board of Com'rs v. Strawn, 157 Fed. 49, 84 C. C. A. 553, 15 L. R. A. (N. S.) 1100. The law impresses a trust upon funds so misapplied, and to the extent that the said money, or any portion thereof, either in its original or a substituted form, can be traced into the funds which came into the possession of the receiver, the appellee is entitled to a preference over the general creditors. Titlow v. McCormick, 236 Fed. 209, —— C. C. A. ——; Schuyler v. Littlefield, 232 U. S. 707, 34 Sup. Ct. 466, 58 L. Ed. 806; Brennan v. Tillinghast, 201 Fed. 609, 120 C. C. A. 37; Board of Com'rs v. Strawn, 157 Fed. 49, 84 C. C. A. 553, 15 L. R. A. (N. S.) 1100; In re Brown, 193 Fed. 24, 113 C. C. A. 348; Spokane County v. First Nat. Bank, 68 Fed. 979, 16 C. C. A. 81; In re See, 209 Fed. 172, 126 C. C. A. 120.

[3] But it does not appear from the evidence that any of the appellee's money, or any property into which it was transmuted, ever came into the possession of the Centralia Bank, or was in the possession of any of its reserve banks, or other banks, at the time when the Centralia Bank closed its doors. It is shown that $35,000 of the amount so placed to the credit of the Centralia Bank in the Seattle Bank was transferred from the Seattle Bank to the Centralia Bank's credit in the Bank of California of Tacoma, a reserve agent of the

Centralia Bank; but it also appears that thereafter, on July 22d, the account of the Centralia Bank with the Tacoma Bank was overdrawn by $11,423.69, and it is not shown that any of said money came back to the Centralia Bank. Between July 13th and July 28th the total of the deposits of the Centralia Bank with the Seattle Bank, including the appellee's money, was $184,102.01. The credit so established was exhausted by the transfer of money to the Bank of California of Tacoma, as above noted, by the transfer of about $20,000 to the Continental Bank of Chicago, a reserve agent of the Centralia Bank, by drafts drawn by the Centralia Bank in favor of its creditors on its account with the Seattle Bank, by the cashing of checks at the Seattle Bank drawn on the Centralia Bank by depositors of that bank, by the Seattle Bank charging back to the Centralia Bank certain discount notes, which were either charged to accounts of depositors of the Centralia Bank or were exchanged for renewal notes taken by the Centralia Bank and rediscounted by it with other banks. But none of the appellee's money so deposited in the Seattle Bank is shown to have gone from that bank back to the Centralia Bank, or to be traceable into any fund that came into the receiver's hands.

[4] The appellee contends, on the authority of Commercial National Bank v. Armstrong, 148 U. S. 50, 13 Sup. Ct. 533, 37 L. Ed. 363, that the Seattle Bank could not lawfully apply on the Centralia Bank's overdraft as it stood on July 14, 1914, the sum of $11,071.64 out of the moneys received for the appellee's bonds, for the reason that the money so received on the sale of the bonds was a trust fund, and that in contemplation of law the Seattle Bank has at all times held that sum as the agent of the Centralia Bank. A similar contention is made as to the proceeds of three notes, aggregating $12,225, which had been guaranteed by the Centralia Bank to the Seattle Bank, and by the latter charged back to the former. But it does not follow from these facts that the appellee can, in the present suit, recover either of those sums; for, as we have already found, there is nothing to show that either thereof ever came into the possession of the Centralia Bank, or its receiver, from the Seattle Bank, or that the latter admits liability to pay the same. It should be assumed, in absence of evidence to the contrary, that the Seattle Bank dealt with the proceeds of the bonds on understanding that the Centralia Bank had complied with the law, and had given the statutory bond, which would legalize its possession and right of disposition of the moneys collected on the sale of the bonds.

The case is clearly distinguishable from Merchants' Nat. Bank v. School District No. 8, 94 Fed. 705, 36 C. C. A. 432, cited by the appellee, and relied upon by the court below. In that case the Helena Bank sent school bonds to its correspondent bank in Boston, with instructions to sell the same. They were sold, and the proceeds were placed to the credit of the Helena Bank, but were not at that time transferred to the Helena Bank. That bank, on learning that the bonds had been sold, opened an account with the school district, crediting it with the amount so received by its agent. Subsequently, and before the Helena Bank closed its doors, all the money so realized on the sale of the bonds in Boston was received by the Helena Bank "in due course of

business," so that the money had actually gone into the Helena Bank prior to the receivership.

The decree is reversed, and the cause is remanded to the court below, with instructions to dismiss the bill.