### In re YEGEN et al.

(Circuit Court of Appeals, Ninth Circuit. October 20, 1924. Rehearing Denied November 17, 1924.)

#### No. 4311.

1. **Bankruptcy ⊗=60—Act of Montana court in appointing receiver for private bank because of insolvency not "act of bankruptcy" as to owner.**

Act of Montana court in appointing receiver for bank of private parties because of insolvency of the bank *held* not act of bankruptcy, within Bankruptcy Act, § 3, subd. 4 (Comp. St. § 9587), as under Rev. Codes Mont. 1921, §§ 6096, 6097, 6100, 6103, as amended by Sess. Laws Mont. 1923, c. 90, private banks have identity apart from owners thereof.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Act of Bankruptcy.]

2. **Bankruptcy ⊗=60—Appointment of receiver, to constitute act of bankruptcy, must be predicated on insolvency as defined by Bankruptcy Act.**

To constitute act of bankruptcy because receiver has been put in charge by state court, appointment must be predicated on insolvency as defined by Bankruptcy Act (Comp. St. § 9585 et seq.).

Appeal from the District Court of the United States for the District of Montana; George M. Bourquin, Judge.

In the matter of Peter Yegen and Christian Yegen, alleged bankrupts. From a decree dismissing involuntary petition, petitioners appeal. Affirmed.

Maury & Maury, of Butte, Mont., for appellants.

Canning & Geagan and Kremer, Sanders & Kremer, all of Butte, Mont., for appellees.

Before HUNT and RUDKIN, Circuit Judges, and BEAN, District Judge.

BEAN, District Judge. This is an appeal from a decree dismissing an involuntary petition in bankruptcy, praying for the adjudication of Peter Yegen and Christian Yegen, as partners doing business as Yegen Bros., and for their adjudication as individuals.

The facts are that for some time prior to March 24, 1924, the alleged bankrupts owned and conducted as partners private banks in the cities of Billings, Gardner, and Butte, in the state of Montana, under the name and style of Yegen Bros., Bankers. On the day named, the Attorney General of the state filed a complaint in the district court of Silver Bow county, in which Butte is situated, praying that a receiver be appointed to take charge of the assets, books, accounts, and property of the bank at Butte. In the complaint it is alleged that about February 28, 1924, the state examiner of banks, by virtue of authority vested in him by law, examined into the business affairs and financial condition of each and all of the private banking institutions owned and operated by the alleged bankrupts, and from such examination ascertained, determined, and found that the property and assets of each of the banks were impaired, and that each was in an insolvent condition, and so reported to the Governor; that the Governor, being satisfied therefrom, that each of the banks was insolvent, and that an application should be made for the appointment of a receiver, did on March 6th direct the Attorney General to file such application in the counties in which each of the banks was located, for the appointment of a receiver for each bank separately. It is further alleged that evidence had been found of the impairment of the property and assets of each of the banks, and of the insolvency of Yegen Bros., Bankers: That the capital and assets of the banks and each of them had been impaired to such an extent as to make it necessary that a receiver be appointed; that the respondents were unable to pay their current obligations as they matured in the usual course of business; that the assets, surplus, and undivided profits of the banks had been absorbed in losses; and that the remaining assets were not sufficient to pay the debts and obligations.

The matter came on for hearing in due course, and the court found that Yegen Bros., Bankers, at Butte, had conducted their business in an unsafe and unauthorized manner; that they were heavily indebted, and so involved that it was impossible for them to meet their claims when due; that the cash in hand was not sufficient to meet the daily checks and demands, and that the bank was greatly impaired and insolvent; that the interests of the creditors and the public required that a receiver should be appointed, and thereupon a receiver of the bank of "Yegen Bros., Bankers, of Butte," was appointed to take charge of the assets and property thereof, and to collect and reduce the same to cash, to pay the outstanding debts and divide the remainder among the parties entitled thereto under the direction of the court, with authority to receive and collect rents and debts, to compound or compromise the same, to make transfers, and generally to do such acts respecting the property and the affairs of the bank as may be authorized by law and the court, to marshal the assets and wind up the affairs of the bank; that as to assets not carried or listed as assets of any of the banks the receiver was to co-operate with receivers appointed for the other banks, and to take joint possession with such receivers, for the purpose of making an equitable application thereof.

Thereafter the petitioners, depositors in the Butte bank, filed a petition in the bankruptcy court for an adjudication of the partnership of Yegen Bros., and of each of them individually, on the ground that the appointment of a receiver by the state court for the Butte bank was an act of bankruptcy, within the meaning of subdivision 4, section 3, of the Bankruptcy Act (Comp. St. § 9587), "because of insolvency a receiver had been put in charge of their property" under the laws of Montana.

[1] Upon a hearing the court below decided that the receiver of the Butte bank was not appointed because of insolvency, within the meaning of the federal Bankruptcy Act (Comp. St. § 9585 et seq.), and this presents the sole question for decision on this appeal. Its solution requires an examination of the banking law of the state of Montana. By this law it is provided that any individual, copartnership, or association intending to conduct a private bank shall, before receiving any money on depos-

it, actually own and possess approved property or assets not exempt from execution of a certain minimum value, depending upon the population of the city or town in which it is proposed to conduct such business, which financial condition must appear and be carried on the books of the bank, and such requirement extends to and is applicable separately to each and every private bank conducted by any person, copartnership, or association, and no asset or assets shall appear on the books of more than one bank. Section 6096, Revised Code of Montana 1921.

Every private bank is subject to examination and investigation by the state examiner for the purpose of ascertaining the financial condition thereof (section 6097), and if such examiner shall find evidence of any impairment of the property or assets of the bank or of the person, copartnership, or association conducting the same, he shall prepare and submit to the Governor and Attorney General a statement of the condition of the bank, and if the Governor and Attorney General are satisfied from such statement that such impairment or insolvency exists, they shall order the examiner to notify the person conducting such bank to make the same good within a specified time, or order the examiner to take immediate charge of the bank (section 6100). If it appears necessary to have a receiver appointed for the bank, the examiner is required to make full and complete report of the condition of its assets and liabilities to the Governor, and if it appears therefrom to the Governor that a receiver is necessary, he shall direct the Attorney General to file a petition in the name of the state in the district where the bank is located, asking for the appointment of a receiver to take charge of and conduct the bank under the supervision of the examiner, either to close up its affairs in accordance with the law, or place it in a solvent condition. Section 6103. In 1923 (chapter 90, Session Laws of that year) the Legislature amended the banking law by adding certain sections and by defining the terms used therein. By this later act the term "capital," in case of a private bank, is defined as "that fund set aside and dedicated for capital purposes," and it is also declared that a bank is insolvent within the meaning of the law "when all of its capital, surplus and undivided profits are absorbed in losses, and the remaining assets will not be sufficient to pay and discharge its contracts, debts and engagements."

It thus appears that each private bank is deemed and treated, for purposes of the state banking law, as having an identity separate and apart from the owners thereof, or from other banks owned by them. It is required to have a certain minimum capital. It is deemed to be insolvent when such capital and its surplus and undivided profits have been absorbed by losses, and the remaining assets are insufficient to meet its obligations. It is required from time to time to make reports of its financial condition to the examiner. It is subject to examination and inspection by that officer. If its capital be impaired, or it be insolvent, as defined by the law, and these defects be not remedied on notice, the examiner may, upon order of the Governor and Attorney General, take charge of the bank, and if necessary a receiver may be appointed to close up its affairs.

It is the bank as an institution which the state thus undertakes to supervise and regulate, and not the owner thereof. A bank may be insolvent, as defined by the state law, because of the impairment of its capital and assets, and the owners be solvent. So, too, the same person or association may own two or more banks, and one of them be insolvent and the others solvent, within the meaning of such law.

The receiver of the Butte bank was appointed by the state court because of the impairment of its capital and its insolvency, and not because of the insolvency of the owners thereof. It was, in a sense, the particular business or enterprise in which the alleged bankrupts were engaged which was found to be insolvent, and for which the receiver was appointed, and not the parties owning the business. Subdivision 4, section 3, of the federal Bankruptcy Law, contemplates the insolvency of the owner of property. The owner and not his business is the subject of the insolvency, within the meaning of this law. It is when the aggregate property of a person, exclusive of any which may have been conveyed, etc., shall not, at a fair valuation, be sufficient in amount to pay his debts, that he is insolvent within the meaning of the federal Bankruptcy Act. The receiver was not appointed by the state court because of such insolvency of the owners of the bank, but because the enterprise or business in which they were engaged was insolvent within the meaning of the state law.

[2] To constitute an act of bankruptcy because a receiver has been put in charge by a state court, the appointment must be

predicated upon insolvency as defined by the Bankruptcy Act. In re Velentine Bohl Co., 224 F. 685, 140 C. C. A. 225; In re Golden Malt Cream Co., 164 F. 326, 90 C. C. A. 258; In re Wm. S. Butler, 207 F. 705, 125 C. C. A. 223. The Bankruptcy Law defines insolvency, and has determined by that definition the consequences, not only to the debtor, but to his creditors. Pirie v. Chicago Title & Trust Co., 182 U. S. 451, 21 S. Ct. 906, 45 L. Ed. 1171.

This case is unlike that of State of Missouri v. Angle, 236 F. 645, 149 C. C. A. 640. There the owner of a private bank had been adjudged a bankrupt under the federal law, and the question for decision was whether the receiver of the bank appointed by the state court should be required to surrender the property of the bank to the trustee. It is more nearly analogous to U. S. v. Oklahoma, 261 U. S. 253, 43 S. Ct. 295, 67 L. Ed. 638, and Anderson v. Myers (C. C. A.) 296 F. 101.

It follows that the judgment of the court below should be affirmed; and it is so ordered.