**UNITED STATES v. ADAMS, as Special Deputy Supervisor of Banking of State of Washington.**

(District Court, W. D. Washington, S. D. November 20, 1925.)

No. 213.

**1. Post office ⊂⊃12—United States not deprived of any rights or interest in cashier's checks and drafts purchased by postmaster in official capacity.**

United States was not deprived of any rights or interest in cashier's checks and drafts purchased by postmaster in his official capacity with public money received in operation of post office, under provision of Rev. St. § 3847 (Comp. St. § 7209), authorizing temporary deposits at postmaster's "own risk," in view of section 3846 (section 7208).

**2. Bankruptcy ⊂⊃60—Action of state superintendent of banking in taking possession of bank's assets for liquidation held "act of bankruptcy."**

Action of Supervisor of Banking of State of Washington, in taking possession of assets of insolvent bank, for liquidation constitutes an "act of bankruptcy" within Rev. St. § 3466, and Bankr. Act, § 3 (Comp. St. §§ 6372, 9587), giving preference to debts due United States, in view of Rev. St. § 3467 (Comp. St. § 6373).

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Act of Bankruptcy.]

**3. Bankruptcy ⊂⊃60—What constitutes "act of bankruptcy" stated.**

It is an "act of bankruptcy" for insolvent to apply for receiver or trustee for his property, regardless of whether such property is taken over by receiver or trustee, and, when receiver or trustee takes charge of such property under laws of state, territory, or United States, regardless of whether this was accomplished at instance of insolvent.

**4. Banks and banking ⊂⊃80(4)—Statute giving preference to insolvent's debts due to United States applies to state banks.**

Rev. St. § 3466 (Comp. St. § 6372), giving preference to insolvent debts due United States, applies to liquidation of insolvent state banks, in view of Bankr. Act, § 4 (Comp. St. § 9588), though not to national banks because of Banking Act.

In Equity. Suit by the United States against T. H. Adams, as Special Deputy Supervisor of Banking of the State of Washington, liquidating the Southwestern Washington Bank of Ilwaco. Decree for petitioner.

Thos. P. Revelle, U. S. Atty., and Donald G. Graham, Asst. U. S. Atty., both of Seattle, Wash.

Miller, Wilkinson & Miller, of Vancouver, Wash., for respondent.

CUSHMAN, District Judge. Petitioner, the United States, sues to establish a preference right to payment on account of certain transactions between the postmaster at Ilwaco, Wash., and the state bank, whose affairs the defendant is liquidating. The case has been tried to the court, without a jury, upon the following statement of facts:

"* * * That prior to the 4th day of September, 1923, the Southwestern Washington Bank was a corporation organized and existing under the laws of the state of Washington and engaged in a general banking business at Ilwaco, Pacific county, Wash., and was the only bank in the town of Ilwaco.

"That immediately prior to the 4th day of September, A. D. 1923, the supervisor of banking of the state of Washington, after an examination, found the said Southwestern Washington Bank to be unsound, unsafe, and in an insolvent condition on account of mismanagement and embezzlement on the part of the officers, and that the assets thereof had been reduced and dissipated to such an extent that on September 4, 1923, and for some time prior thereto, the actual cash market value of the total assets was insufficient to meet the outstanding indebtedness of said bank, and said supervisor of banking thereupon, on said 4th day of September, A. D. 1923, by virtue of authority vested in him by law, took possession of said bank, and ever since has been, and now is, engaged in liquidating its affairs, and T. H. Adams, the defendant herein, is the special deputy supervisor of banking liquidating the affairs of said bank. That on said 4th day of September, 1923, and

immediately prior thereto, said bank was insolvent, in that its assets at a fair valuation were insufficient to pay all of its debts.

"That during all of the time mentioned and referred to in the pleadings herein Rees B. Williams was the regularly qualified and acting postmaster of the United States post office at Ilwaco, Wash.·

"That said bank, through its authorized officers and agents, had qualified under the rules and regulations of the Post Office Department of the United States as an authorized depository of postal savings funds, and for this purpose had deposited as collateral security with the Treasurer of the United States Liberty Bonds of the par value of $2,000, and the postal savings account with said bank was carried in the name and to the credit of the board of trustees of the Postal Savings System.

"That some time prior to the taking possession of said bank by the supervisor of banking of the state of Washington, for the purpose of liquidation, to wit, on August 13, 1923, the board of trustees of the Postal Savings System had a deposit in said bank in the principal sum of $1,793.64, and that the said postmaster of Ilwaco had on hand at said time $800 in postal savings funds which he was not authorized to deposit without additional collateral security. That said postmaster, relying on the representations of the cashier of said bank that additional bonds in the required amount would be forthwith forwarded to the Treasurer of the United States, deposited said sum of $800 to the credit of the board of trustees of the Postal Savings System, making a total deposit of said account in the principal sum of $2,593.64. That the cashier of said bank did not make any deposit of any additional collateral security, and no bonds were deposited by said bank with the Treasurer of the United States as collateral for said postal savings account in excess of $2,000. That the said bank had on hand at all times, after said deposit of $800 was made, and when possession was taken by the supervisor of banking, cash assets exceeding the amount of said deposit.

"That following the taking possession of the said bank and the liquidation of its affairs, as hereinbefore stipulated, the board of trustees of the Postal Savings System sold the Liberty Bonds mentioned and referred to at the market value, to wit, $97.-19, or a total sum, including accrued interest, amounting to $1,954, which sum the

board of trustees accredited to said bank account of the postal savings account, which totaled $2,613.23, leaving a balance due said board of $659.23.

"That on August 13, 1923, the said postmaster purchased from the said bank its cashier's check No. 2689, in the sum of $125, the said cashier's check being made payable to the order of Rees B. Williams, and was purchased, as the cashier of said bank then and there knew, with funds received by said postmaster from the business and operation of the United States post office at Ilwaco.

"That on August 23, 1923, the said postmaster, Rees B. Williams, purchased from the cashier of the Southwestern Washington Bank its cashier's check No. 2722, payable to the order of Rees B. Williams for the sum of $155, said purchase being made from public money received by the postmaster from the business and operation of the United States post office at Ilwaco, which fact was then and there known to the cashier of said bank.

"That on August 29, 1923, the said postmaster, Rees B. Williams, purchased from the cashier of the Southwestern Washington Bank draft No. 633, in the sum of $425, payable to the postmaster at Seattle, and drawn on the Dexter-Horton National Bank at Seattle. That said draft was purchased from surplus funds received by the postmaster from the money order division in the operation of said United States post office at Ilwaco, and the cashier of said bank then and there knew that said purchase was being made by said postmaster in his official capacity with post office money.

"That on August 31, 1923, the said postmaster, Rees B. Williams, purchased from the cashier of said Southwestern Washington Bank draft No. 635, in the sum of $820, drawn on the Dexter-Horton National Bank at Seattle, and payable to the postmaster at Seattle; that said draft was purchased from money received by said postmaster from the sale of treasury saving certificates in the operation of said United States post office at Ilwaco, and the cashier of said bank then and there knew that said purchase was being made by said postmaster in his official capacity with post office money.

"That on September 1, 1923, the said postmaster, Rees B. Williams, purchased from the cashier of the Southwestern Washington Bank draft No. 636, in the sum of $95.52, drawn on the Dexter-Horton National Bank at Seattle, and payable to the

9 F.(2d)—40

postmaster at Seattle, Wash., that said draft was purchased as the cashier of said Bank then and there knew, with public funds received by the postmaster from the operation of said United States post office at Ilwaco.

"That on or about November 1, 1923, the United States duly filed with T. H. Adams, the liquidating officer of said bank, its claim for post office and postal funds and accounts itemized as follows:

| | |
|---|---|
| Cashier's check No. 2689 | $125.00 |
| Cashier's check No. 2722 | 155.00 |
| Draft on Dexter-Horton National Bank of Seattle, No. 633 | 425.00 |
| Draft on Dexter-Horton National Bank of Seattle, No. 635 | 820.00 |
| Draft on Dexter-Horton National Bank of Seattle, No. 636 | 95.52 |
| Postal Savings Deposits (unsecured) | 659.23 |
| Total | $2,279.75 |

and that said bank was and now is indebted for all of said items which are unsecured and unpaid, and there are no offsets or counterclaims on account thereof.

"That said claim was disapproved and disallowed as a preferred claim by the liquidating officer of said bank, and that no part of said claim has been allowed as a preferred claim.

"That the respondent is liquidating and settling the affairs of said bank, and has allowed and paid dividends on claims, and has allowed and paid preferred claims. * * * "

Plaintiff cites United States v. Oklahoma, 261 U. S. 253, 43 S. Ct. 295, 67 L. Ed. 638; Allen, etc., v. United States (C. C. A.) 285 F. 678; City of Centralia v. United States Nat. Bank of Centralia (D. C.) 221 F. 755; United States Fidelity & Guaranty Co. v. Bramwell (D. C.) 295 F. 331; Bramwell v. United States Fidelity & Guaranty Co. (C. C. A.) 299 F. 705; In re International Coal Mining Co. (D. C.) 143 F. 665; In re Hercules Atkin Co., Ltd. (D. C.) 133 F. 813; Beaston v. Farmers' Bank, 12 Pet. 133, 9 L. Ed. 1017; Equitable Trust Co. of N. Y. v. Connecticut Brass & Mfg. Corp. (C. C. A.) 290 F. 712.

Respondent cites Cook County Nat. Bank v. United States, 107 U. S. 445, 2 S. Ct. 561, 27 L. Ed. 537; Davis v. Elmira Savings Bank, 161 U. S. 275, 16 S. Ct. 502, 40 L. Ed. 700; Davis v. Pringle, 268 U. S. 315, 45 S. Ct. 549, 69 L. Ed. 974; United States v. Oklahoma, 261 U. S. 253, 43 S. Ct. 295, 67 L. Ed. 638; Strain v. United States Fidelity & Guaranty Co. (C. C. A.) 292 F. 695; Commonwealth v. Phœnix, 11

Metc. (Mass.) 129; Prince v. Bartlett, 8 Cranch, 432, 3 L. Ed. 614; Conard v. Atl. Ins. Co. of New York, 1 Pet. 386, 7 L. Ed. 189; United States Fidelity & Guaranty Co. v. Strain, 264 U. S. 570, 44 S. Ct. 334, 68 L. Ed. 854; In re Folkstad (D. C.) 199 F. 363; Olive v. Armour & Co., 167 F. 517, 93 C. C. A. 153, 21 L. R. A. (N. S.) 109; United States Fidelity & Guaranty Co. v. Porter (D. C.) 3 F.(2d) 57; In re Yegen (C. C. A.) 1 F.(2d) 841.

Section 3466 R. S. (section 6372, Comp. Stat.), provides:

"Whenever any person indebted to the United States is insolvent, or whenever the estate of any deceased debtor, in the hands of the executors or administrators, is insufficient to pay all the debts due from the deceased, the debts due to the United States shall be first satisfied; and the priority hereby established shall extend as well to cases in which a debtor, not having sufficient property to pay all his debts, makes a voluntary assignment thereof, or in which the estate and effects of an absconding, concealed, or absent debtor are attached by process of law, as to cases in which an act of bankruptcy is committed."

Section 3467, R. S. (section 6373, Comp. Stat.), provides:

"Every executor, administrator, or assignee, or other person, who pays any debt due by the person or estate from whom or for which he acts, before he satisfies and pays the debts due to the United States from such person or estate, shall become answerable in his own person and estate for the debts so due to the United States, or for so much thereof as may remain due and unpaid."

No attempt is made in this case to differentiate in regard to petitioner's rights arising out of the several transactions enumerated in the foregoing statement, except as herein noted.

[1] Respondent contends that, under the rule established in United States v. Oklahoma, 261 U. S. 253, 43 S. Ct. 295, 67 L. Ed. 638, and Strain, etc., v. United States Fidelity & G. Co. (C. C. A.) 292 F. 694, affirmed United States Fidelity & Guaranty Co. v. Strain, etc., 264 U. S. 570, 44 S. Ct. 334, 68 L. Ed. 854, the United States has no preference over other creditors of the bank. Respondent further contends that, as to the checks and drafts mentioned, the United States has no right or interest in them, and can recover nothing from the re-

spondent on account of them. This contention is evidently based upon the use of the words "at his own risk" as they occur in section 3847, R. S. (section 7209, Comp. Stat.), which is as follows:

"Any postmaster, having public money belonging to the government, at an office within a city or town where there is no Treasurer or Assistant Treasurer of the United States, or designated depositary, may deposit the same temporarily, at his own risk and in his official capacity, in any national or state bank in the state in which the said postmaster resides, or in which his office is located, or within a reasonable radius of his post office in an adjacent state, but no authority or permission is or shall be given for the payment to or receipt by a postmaster or any other person, of interest, directly or indirectly, on any deposit made as herein described."

Respondent's contention is untenable. This is not only shown by the language of the section, but when the same is read in connection with section 3846, R. S. (section 7208, Comp. Stat.), which is as follows:

"Postmasters shall keep safely, without loaning, using, depositing in an unauthorized bank, or exchanging for other funds, all the public money collected by them, or which may come into their possession, until it is ordered by the Postmaster General to be transferred or paid out."

[2] Upon the first-mentioned proposition petitioner contends that the Oklahoma and Strain Cases, supra, are not applicable, and that under section 3466 and the ruling thereon in Bramwell v. United States Fidelity & Guaranty Co. (C. C. A.) 299 F. 705, its right to a preference is established. Second, petitioner contends that if there is no preference right under the statute, there is under the general rule: That where there is an unauthorized deposit of public money a trust attaches to the fund of which such deposit becomes a part; relying as to the latter position upon United States Nat'l Bank, etc., v. City of Centralia, 240 F. 93, 153 C. C. A. 129 (9th Circuit C. C. A.); Titlow et al., v. McCormick, 236 F. 209, 149 C. C. A. 399 (9th Circuit C. C. A.); Allen, etc., v. United States, 285 F. 679 (1st Circuit C. C. A.); Equitable Trust Co. of New York v. Connecticut Brass & Mfg. Corp., 290 F. 712 (2d Circuit C. C. A.). Petitioner's contention in this respect it is not necessary to consider, if the Bramwell Case is controlling.

The issue is narrowed to this: Did the action of the supervisor of banking in taking possession, for liquidation, of the assets of the bank, because of its insolvency, constitute an act of bankruptcy; for insolvency, as defined by the Bankruptcy Act (Comp. St. §§ 9585–9656) and Rev. St. § 3466, is shown, and there is no contention that there has been a voluntary assignment or attachment.

Respondent's contention is that the Bramwell Case is not applicable to the present suit, because in that case the United States was decreed a preference because the action of the board of directors of the bank amounted to a "voluntary assignment," bringing the case within section 3466, while in the present case no such action was taken.

It is true that the ruling in the Bramwell Case was made on such ground, but such was not the only ground of such holding, for the court also held:

"Again, the law of Oregon (Or. L. tit. 35, c. 5) abolishes receiverships of insolvent banks and provides a substitute therefor in the superintendent of banks. We think it should be held that the voluntary transfer of the bank and its property to the superintendent of banks and the submission thereof to his administration in liquidation and disposition of the proceeds was in substance putting a 'receiver or trustee' in charge of the bank's property under the law of the state and within the meaning of the Bankruptcy Act. The decision in the Oklahoma case is not authority to the contrary. There it was held that the bank commissioner in charge of the bank was not a receiver, as defined in the Bankruptcy Act, for the reason that he did not take possession because of the existence of insolvency, but acted only as an instrumentality of the state in the exercise of its police power to effect the protection of depositors, with authority to pay depositors promptly out of a state guaranty fund if necessary. There was no transfer in that case, nor assignment nor any act of the officers of the bank by way of surrendering the bank's assets, but the bank commissioner upon his own initiative took possession under the provisions of the state law."

The foregoing ruling, it is clear, was because of the result—the effect accomplished by the action of the directors of the bank—and not because it was the directors who acted to accomplish it; that is, the rul-

ing was that, "because of insolvency, a receiver or trustee had been put in charge of the bank's property," and that therefore an act of bankruptcy had occurred, and the fact that such effect was the result of action by the directors was incidental.

Section 3 of the Bankruptcy Act (Comp. St. § 9587) reads:

"Acts of bankruptcy by a person shall consist of his having * * * (4) made a general assignment for the benefit of his creditors, or, being insolvent, applied for a receiver or trustee for his property or because of insolvency a receiver or trustee has been put in charge of his property under the laws of a state, of a territory, or of the United States."

[3] The foregoing shows that, when an insolvent applies for a receiver or trustee for his property, it is an act of bankruptcy, whether such property has been taken over by such receiver or trustee or not. But, when, "because of insolvency, a receiver or trustee has been put in charge of his property under the laws of a state, of a territory, or of the United States," there is an act of bankruptcy, and it matters not how such result was brought about. In the latter instance it is, insolvency being present, the result that controls, and not the fact that it was accomplished at the instance of the insolvent.

[4] In Davis, Federal Agent, v. Pringle, Trustee, 268 U. S. 315, 45 S. Ct. 549, 69 L. Ed. 974, it was held that in the administration of estates in bankruptcy the United States was, because of the terms of section 64 (a and b) of the Bankruptcy Act (Comp. St. § 9648), entitled to priority of payment only as to taxes due it. In Cook County Nat. Bank v. United States, 107 U. S. 445, 2 S. Ct. 561, 27 L. Ed. 537, it was held that section 3466 did not apply in the liquidation of an insolvent national bank, because of the terms of the Banking Act which was the later enactment. In other respects section 3466 is in effect, and in the liquidation of a state bank it is applicable, for, under section 4 of the Bankruptcy Act (Comp. St. § 9588), a banking corporation may not be adjudged a bankrupt.

The decree will be for the petitioner. At the time of settling the decree the parties will be heard upon the question whether it should be conditioned as indicated in the case of Allen v. United States (C. C. A.) 285 F. 678, at page 684.

Neither party will recover costs.